PINNEY <i>against</i> BISSELL.

Where a testator devised the *South* half of a farm to *A.*, and the *North* half to *B.*, without specifying the divisonal line, or appointing any person to make a division ; and it was made by freeholders appointed by the court of ● probate ; it was held, that this proceeding was legal.

This was an action of trespass *quare clausum fregit ;* tried at *Hartford, February* term, 1828, before *Hosmer,* Ch. J.

*Hartford,*
*June, 1828.*

Pinney
*v.*
Bissell.

*Elijah Stoughton,* by his last will, devised to three of his children, *viz.* the plaintiff's wife and two of her sisters, the *South* half of his home-lot farm from *Connecticut* river to the *East* end, and to two other children, *viz.* the defendant's wife and another, the *North* half of his home-lot farm. To shew the place of the divisional line between the *North* and the *South* half, the plaintiff offered in evidence a distribution of the home-lot, made by order of the court of probate. To the admission of this evidence the defendant objected, on the ground that the court of probate had no authority to order such distribution. The Chief Justice, being of this opinion, rejected the evidence. The plaintiff thereupon moved for a new trial.

*T. S. Williams,* in support of the motion, contended, That as the testator had made by will such a disposition of this estate as to render the interposition of distributors necessary, and had appointed no person to make this division, the case was within the reason, if not the letter, of the statute, *tit.* 32. *sect.* 35. The testator had given different parts of his estate to different sets of devisees, and had furnished a *rule* of division ; but he had left the *line* of division to be determined by distributors. It is the very case contemplated by the statute. The section referred to is substantially like the act of *October,* 1716. *Stat.* 273. *tit.* 60. *c.* 8. ed. 1808.

*W. W. Ellsworth,* contra, insisted, That this was not a case within the statute, which contemplates only an estate in common ; and that the court of probate had no power to make the division.

DAGGETT, J. The question presented by this motion, is, whether the distribution made under the will of *Elijah Stoughton,* and accepted by the court of probate, was proper evidence to be received in this cause. The objection is, that the court of probate had no jurisdiction of this subject ; and therefore, the proceedings are *coram non judice.* This depends on the sound construction of the statute relative to the settlement of testate and intestate estates. *Stat.* 208. *tit.* 32. *sect.* 35. This law authorizes the court of probate to appoint three freeholders to make division of such estate as is given by will to two or more devisees, where no person is appointed to divide the same, &c.

It is a principle of our law, coeval with our first municipal regulations on this subject, that the settlement of all estates both real and personal of deceased persons, appertains to the court of probate within whose jurisdiction the estate is ; and an appeal lies from every order, sentence or decree of this court in relation thereto, to the superior court ; and from this last court, by motion for new trial or writ of error, the cause may be brought to the supreme court of errors.   No course could be devised, perhaps, better adapted to effect a *speedy* settlement of estates, an important object in view of our law. By the statute, all intestate estates are to be distributed ; and by the section under examination, all estates devised to two or more persons, where no person is appointed to divide the same, are in like manner to be distributed.

It is, however, urged, that this section relates solely to a devise of real estate to two or more persons *in common.*   Now, this is not the language of the statute : If it were, the construction might be different.   There is no expression tending to limit it to estates in common.   It would have been natural, had the intention of the legislature been so to limit it, to have used words apt to that object; but no such language is employed, nor is the court at liberty to adopt it.   I infer, then, that the statute contemplates other estates than those which are given in common.

But by will, one farm is devised to *A.*, and another to *B.* Here, there can be no room for a division : All the estate is given in severalty, and nothing is to be done.

There is no difficulty, then, where the estate devised is a tenancy in common, nor where it is in severalty, as is supposed in the two cases stated.   The one is clearly embraced by the statute ; and the other, as clearly, not.

An intermediate description, however, might, and in my judgment, undoubtedly would, come within the statute.   Thus, suppose the devise to be of the *South* half of a farm to *A.*, and the *North* half to *B.*, in *quantity and quality ;* or a thousand dollars worth on the *South* to *A.*, and a thousand dollars worth on the *North* to *B.*   Here, there is no estate in common devised ; and yet it is admitted there must be a division, by order of the court of probate.   If, however, a river is, by the will, made the dividing line, then nothing is to be done ; no further division can be made.

This brings us to the precise question in the case.   The de-

*Hartford,*
June, 1828.

Pinney
*v.*
Bissell.

vise is of "the *South* half of my home-lot farm, from *Connecticut* river to the *East* end" to one, and "the *North* half" to another. Whether the whole farm lies in a square or parallelogram; whether it lies at right angles with the river on the *West*, or the adjoining land on the *East;* or whether it is of equal or unequal width; we are not informed. A further act is to be done, most certainly, to ascertain the extent of the devise; and it seems to me very proper that the question should be put at rest, by the order of the court of probate. If either party is aggrieved, an appeal will lie, and thus the question be speedily settled, as it ought to be. I am the more inclined to adopt this construction, because such I believe to be the practice of our courts of probate, and that this practice will put at rest questions which can be speedily terminated, and thus prevent much litigation respecting very unimportant matters.

Let there, therefore, be a new trial.

PETERS and LANMAN, Js. were of the same opinion.

HOSMER, Ch. J. It is indisputable, that the jurisdiction of of the probate courts in this state, is limited; and is conferred by statute alone. These courts have no common law jurisdiction. The question is merely this; whether by statute, the court of probate was empowered, in any manner, to distribute the home-lot between the devisees of separate property, and thus to fix the divisional line between them. I have not heard it contended, that if the *North* half of the home-lot had been devised solely to the plaintiff, and the *South* half of it solely to the defendant, the probate court would be authorized to ascertain the dividing line between the parties, and set up metes and bounds. There would be nothing to be divided between them; for the will would have made the division. But the pretence is, that as the *North* half of the lot was give to *A. B.,* and the *South* half of it to *C. D.,* the probate court may cause a division between the separate devisees of each moiety, and thus fix the divisional line between them *incidentally,* in order to make a correct distribution. This position I do not admit. That the devisees of the *North* half of the lot are distinct and separate from the devisees of the *South* half, having no common interest with them in any part of the premises, is intuitively certain. Had the *Northern* half of the land been called *Black-Acre,* and the *Southern, White-Acre;* the former having been

devised to the plaintiff, and the latter to the defendant; the *Hartford,* June, 1828.
case would be precisely the one before us.

These preliminary observations having been made, that the *Pinney v. Bissell.*
question to be decided may be distinctly discerned, I will
now recur to the law on which the plaintiff relies.

The first statute on the subject in question, was passed in
*October,* 1716, and by successive enactments was continued in
existence, in the same unvaried expressions, to the year 1821.
It was then reenacted in substance, and with this difference
only, that the preamble to the law, as it stood originally, was
incorporated with the enacting part. By the act of *May,* 1821,
(*p.* 485.) such of the revised statutes as remained *substantially*
the same as before the revision, are to be considered as still in
force, any circumstantial amendments or variations in phrase-
ology, arrangement and connexion, notwithstanding.

It is my purpose to comment on the different parts, both of
the original and revised law, in order to ascertain their precise
meaning. This is the more necessary, as I have found on
enquiry, that the practice of the respective courts of probate,
on the matter in question, has been various; so that no argu-
ment is deducible from a concordant exposition of the law.

The rules of construction to ascertain the intent of a law,
are unquestionably established.

The first of them is, that where there is nothing but the
words of an act to unfold the legislative intent, they must be
taken in their plain, popular signification. Hence, it is always
inadmissible, in the case supposed, to construe a statute other-
wise than from the import of the words, on a conjecture that
the legislature had a different meaning. *Curtis* v. *Hurlburt,* 2
*Conn. Rep.* 309. 1 *Kent's Com.* 432. Such conjectural con-
struction annihilates the statute, and the judge becomes the
law-maker.

It is, also, a rule of exposition firmly established, that such
construction must be put upon a statute, as may best answer
the intention the makers had in view. 11 *Rep.* 73. *Plowd.*
232. The reason is, that their intention is the law.

When a statute has a preamble, declaring the precise ob-
ject and intent of the legislature, there is no doubt of the inten-
tion, and no room for conjecture; and unless the enacting
clause is expressed in clear and unambiguous terms, the pre-
amble conclusively shews the meaning of the law. *Plowd.* 369.
1 *Inst.* 79. 4 *Term Rep.* 793. A supposed convenience be-

yond the expressions of the preamble and the words of the enacting clause, can never vary its construction. It is the duty of the judge *jus dicere, non dare ;* and if a law falls short of the general convenience, it is the appropriate business of the legislature to supply the deficiency.

The act of 1716, and the successive enactments, until the year 1821, had a title expressive of the object in view, and a preamble defining the legislative intent.

I pass by the title without observation, as it is no part of the law. *Hardr.* 324. *Chance* v. *Adams,* 1 *Ld. Raym.* 77.

The preamble to the act, was in the following words : " Whereas, it sometimes happens, that real estate given by will, is *ordered by the testator,* to be divided among two or more legatees, and no person is appointed in the will for the dividing thereof, or the person appointed may neglect or refuse to make the said division, or die before he hath made the same."

The mischief to be remedied appears from this recital with the most infallible certainty. It exists when there is a last will,—in which the testator *orders* a division of the property devised among two or more devisees,—and the order is not complied with, by reason of the non-appointment of a person to divide, or of his refusal or incapacity to fulfil the trust. The words of the preamble are plain, unequivocal and admitting of but one construction. It is only for a person to open his mind to the language, and the idea enters. The law is made to fulfil the clear intention of the devisor ; and the key to this intention is his *order,* or in other words, his *express* direction. If he is silent on the subject of a division, he does not order or direct it, unless on this matter of fact, the law absurdly implies, that the silence of a testator is equivalent to his precept, command or authoritative direction. On the contrary, the omission to order a division necessarily infers, that no such division was contemplated or *intended.* Under *such circumstances,* if the probate court direct a division, the intention of the devisor is not executed, but is violated.

After having made the above recited preamble, the legislature enacted, " That when and so often as it so happens, *in either of these cases,* it shall be lawful for the court of probate in the county where such real estate is, to appoint freeholders to make a division thereof *according to the will.*" By the expression " in either of these cases," reference is had to the

preamble, which is thus made the soul and vital principle of *Hartford,* the act, and incorporated in the enacting part of the law.    That *June, 1828.* distribution of the estate, a common and constant exercise of jurisdiction, and *applicable to intestate estates only,* is not intended, is strikingly apparent from the special jurisdiction conferred.    The distribution of intestate estate is uniformly made by order of the probate judge, who approves a will or grants letters of administration.    But the division spoken of in the act under discussion, and until the year 1822, was to be made by a court of probate *" in the county where the real estate is."*    It was a special power imparted by law, to carry into execution the declared intention of the devisor; and has nothing in it of the ordinary power of probate courts.

Pinney
v.
Bissell.

The act of 1821, with one exception, is of the same import as the former law.    The existing statute (*p.* 208. *sect.* 35.) provides, that " when real estate given by will, is *ordered* by the testator, to be divided among two or more devisees, and no person is appointed to divide the same, or the person appointed neglects or refuses to make the division, or dies before he has made it, the court of probate before which the will is proved and approved, shall appoint three freeholders, as the law provides for the dividing of intestate estates, to make division thereof, *according to the will.*"    This law differs from the former, in one particular only.    It gives jurisdiction to the court of probate to cause a division before which the will was proved and approved, instead of a probate court in the county where the land lies.    At the same time, it clearly limits the jurisdiction of the court, by declaring, when the testator has ordered a division, that " the division shall be made *according to the will.*"    Hence, it necessarily results, if no order is made by the testator, and the will is silent concerning a division, none is authorized to be made; because " according to the will," *i. e.* in compliance with an order or command of the devisor, it cannot be done.

Why should the law compel a division not ordered by the devisor, nor desired by the owners; or if desired, which may be effected by compact, or by writ of partition?    Or why should this court be pressed to give to an act a construction not warranted by its expressions and apparent intent, to attain an object unrequested and unnecessary?    If the legislature deem it expedient, let that body in this, as in other instances, extend the law to cases like the one in question.    The court

then will escape the evil of giving a construction, not on the whole law, as they are bound to do, (1 *Inst.* 381. *Plowd.* 365.) but on a part of it. For I think it demonstrably clear, that the plaintiff's construction cannot be adopted, until the words " is ordered by the testator," are first expunged from the law. This is beyond the authority of the court. It is an established rule, " That such sense is to be made on the whole [law] as that no clause, sentence or word shall prove superfluous, void or insignificant, if by any other construction, they may be made useful or pertinent." *Rex* v. *Berchet* & al. 1 *Show.* 108. *Stevens* v. *Duckworth, Hardr.* 344.

In the argument of this case, sufficient regard was not had to the marked distinction between intestate and testate estates. In the former,—*i. e.* intestate estates,—the law alone takes the subject in hand, and on principles of general convenience, orders a distribution. But testate estates are precisely such as the devisor intends they shall be, if his intention is not prohibited by law. He may dispose of his estate as he pleases. A last will is the *conveyance* of an estate, by an individual, and is assimilated to conveyance by deed. It would seem as reasonable that some court should be empowered and enjoined to divide, *ex arbitrio*, all real estates among joint purchasers, without their request, as that the probate court should be authorized to do the same thing among joint devisees. I am satisfied, that the law has neither enjoined nor prescribed a proceeding so unnecessary and uncalled for ; and that the probate court had no authority to cause the distribution, or settle the divisional line, between the parties. The evidence offered, therefore, in my opinion, was legally rejected.

BRAINARD, J. was absent.

New trial to be granted.