## ALFRED LANCASTER'S APPEAL FROM PROBATE.

Where a decree of a probate court approving or disapproving a will has been appealed from and a judgment has been rendered against the appellant in the Superior Court, leaving the original probate decree unreversed, that decree is open to a second appeal by any party interested who has a right of appeal under the statute with regard to probate appeals, and was not a party to the first appeal.

And it seems that it makes no difference that the party taking the second appeal had actual knowledge of the existence of the first appeal, and even was present at the trial and testified as a witness in behalf of the appellant.

The question whether judgments of the Superior Court upon appeals from probate decrees, are judgments *in rem*, with the ordinary incidents of such judgments, discussed in the argument, but not decided.

APPEAL from the decree of a probate court approving the will of Henry E. Judson; taken to the Superior Court in New Haven County.

The executor of the will and one of the devisees under it who had been made parties to the appeal, pleaded in abatement a former appeal taken from the same probate decree to the Superior Court and the judgment of the latter court upon the appeal, such judgment being against the appellants and establishing the will. The probate decree was passed on the 30th of December, 1875; the present appeal was taken June 29th, 1877. Upon the plea in abatement the following facts were found by the court.

Nathan Meux and his wife, both of New Haven, took an appeal from a decree of the probate court of the district of New Haven, approving the will of Henry E. Judson, to the May term, 1876, of the Superior Court for New Haven County, that being the next term of the court. At the September term, 1876, after a full trial and hearing, the Superior Court found the reasons for the appeal to be untrue and affirmed the decree of the probate court and dismissed the appeal. After the appeal had thus been tried and dismissed and within the time allowed by law for taking an appeal from the decree approving the will, Alfred Lancaster, the appellant in this case, whose wife was a sister and heir at law of the

testator, took the present appeal from the same probate decree approving the will. The wife of Lancaster died after the trial of the appeal of Meux and wife, and after the decision of the Superior Court thereon, leaving two minor children. The reasons for appeal in the present case are the same which were filed, tried and found to be untrue in the appeal of Meux and wife. The present appellant was not a party to that appeal. No notice was given to him or his wife that the will would be offered for probate in the probate court, and neither of them was present when the decree approving the will was passed by the probate court. But the present appellant had knowledge in fact of the pendency of the appeal so taken by Meux and wife, and was present at the trial of that appeal in the Superior Court, and testified as a witness on the trial on behalf of the appellants, having been subpœnaed by them.

The court (*Sanford, J.,*) dismissed the appeal, and the appellant brought the record before this court by a motion in error.

*J. Twiss* and *H. D. Russell*, for the plaintiff in error.

1. The statute allowing appeals from decrees of a probate court is broad and comprehensive, and includes "any person aggrieved," provided an appeal is taken within the time allowed by the statute. Gen. Statutes, p. 55, secs. 11, 12, 13.

2. It is found that Lancaster was not present, and had no notice to be present, before the probate court, when the order approving of the will in question was passed. And the fact that he knew of the pendency of Meux's appeal does not impair his right to take this appeal. *Lake's Appeal from Probate*, 32 Conn., 331; *Canfield* v. *Wooster*, 26 id., 384; Wade on the Law of Notice, § 1146.

3. The judgment of the Superior Court in Meux's appeal is no bar to Lancaster's right to take the present appeal. A judgment at law, or decree in equity, to be conclusive, must be upon the same issue and between the same parties and their privies. Lancaster is not a privy in law to Meux and wife, and therefore not bound, as matter of record, by any judgment of the Superior Court in the Meux appeal, to which

he was not a party.   Bouvier Law Dict., *Privies;* 2 Smith's Lead. Cas., 7 Am. ed., 626, 800, 805; Freeman on Judgments, §§ 162, 163, 171 *a; Walker* v. *Perryman,* 23 Geo., 314; *Williams* v. *Sutton,* 43 Cal., 71.

4.   Appeals from probate do not vacate the order appealed from as in case of an appeal from the judgment of a lower court, and the dismissal of such an appeal in no way affects the order of the probate court.   *Merrells* v. *Phelps,* 34 Conn., 109, 111.   The decree of the Superior Court dismissing such an appeal is not in the nature of a judgment.   It merely dismisses the appeal and leaves the parties in the probate court in *statu quo.*   And any number of successive appeals may be dismissed without affecting the order of the probate court.   The finding of the Superior Court is merely that no one of the appellants had shown sufficient reason for appealing.   But if in any, even the first appeal, the probate decree is reversed, there can be no conflict of decision in the Superior Court.   The reversal will, of course, be made upon the appeal of some one to whose interest the probate decree is antagonistic; and manifestly no one could or would appeal from a decree in his own favor.

5.   But the appellees claimed that the decree of a probate court, approving a will, is in the nature of a proceeding *in rem,* binding on all parties in interest, and that the decree of the Superior Court in Meux's appeal must have the same effect.   In cases where an order of the probate court is held to be in the nature of a proceeding *in rem,* it will be found that it is either where the statute of the state requires that notice be given by publication or in some other mode; *Woodruff* v. *Taylor,* 20 Verm., 65, 73; Cooley's Const. Lim., 403; or where any person interested is permitted to be made a party, by application to the court, as in admiralty proceedings; *Bogardus* v. *Clark,* 4 Paige, 623.   Lancaster could not have made himself a party in the Meux appeal.   *Lake's Appeal from Probate,* 32 Conn., 331.

6.   In proceedings *in rem* notice, personal or by publication, is given to bind possible party respondents; but in this state possible party petitioners or appellants are given stated

times by statute in which to take an appeal from any order of a probate court, and whatever be the nature of such an order it cannot affect the right of parties to take an appeal within the statutory time. The objection may be made, that if the statute be construed literally no estate can be finally settled until eighteen months after every minor has become of full age, but is not this the case with every estate probated under a will, when no appeal has been taken? A minor may appeal at any time during his minority. *Davidson's case*, 1 Root, 275. If but one appeal can be taken under the statute, and all parties are to be bound thereby, then great injustice may be done by partial and collusive appeals.

*D. Torrance*, for defendants in error.

The record in this case presents two questions for determination:—1st. Whether under the law of Connecticut, after an appeal has been taken by one party from a decree of probate approving a will, and that appeal has been determined in the appellate court, another person, who by reason of want of notice was not a party to the former appeal, can, while the decree of the appellate court remains in full force, take an appeal from the same decree of probate to the same appellate court, and litigate again the same questions which were determined on the first appeal.—2d. If so, did the present appellant have any such notice of the prior appeal as to preclude him from prosecuting this? If the first question be answered in the negative it will be unnecessary to consider the second. The statutory provisions applicable to the case are sections 11, 12 and 13, of chap. 5, title 4, of the Rev. Statutes of 1875. The case turns upon the construction that shall be given to these provisions. The construction claimed by the appellant is the literal one, to wit, that there may be as many separate appeals from the same decree as there are separate parties; that these appeals may be taken by the parties seriatim or together; and may be all pending at the same time, and tried by different tribunals; and that the determination of any one of them will not affect the others. The appellees claim that these provisions must receive a reasonable

construction—one that shall lead to no absurd consequences —one that shall be in harmony with the intention of the legislature, and shall work the least harm and injustice.

1. The appellees contend that the decree of the Superior Court determining that a certain writing is a will or not a will, is in effect a *decision in rem* and is binding and conclusive upon all the world. This will be manifest, both from the reason of the thing and from authority. Any other conclusion will lead to absurd results and to endless confusion. The decree of the Superior Court fixed the *status* of the writing offered as Judson's will. If while that decree remains in force, the same court can decree the same writing *not to be a will*, then does the court decree that a writing *is a will and not a will* at the same time. These contradictory decrees will both be on the same record, and will be of equal force. Again, it will be conceded that the appellate court established the *whole writing* as Judson's will, and that the decision in that case binds and concludes those who were parties thereto. Then as to Meux and wife, and the other parties to that proceeding, the will is established beyond question. The wife of Meux cannot inherit from her brother because there is a will; but Lancaster's wife can inherit from the same brother because as to her there is no will. Is not this giving effect to but part of the will, when by the supposition the court established the *whole* will? How is the court of probate to proceed in the settlement of the estate? The same appellate court declares that the writing *is a will and not a will* at the same time, and sends the conflicting decrees to the probate court for its guidance. As regards Meux and wife the whole will is valid; as regards Lancaster and wife the whole will is void. *Quoad* Meux and wife the whole estate is testate property; *quoad* Lancaster and wife the whole estate is intestate property. Shall Lancaster have his share under the statute of distribution and the legatees and devisees theirs under the will? Must the court appoint an administrator upon Lancaster's part, and approve of the executor appointed by the will to take charge of the other part? How shall the executor proceed, and how shall the parties ascertain or enforce their

rights? If by the decree of a competent tribunal there is *no will*, what shall prevent Meux and wife from taking under the statutes of distribution? And if by the decree of the same tribunal there is *a will*, why should Lancaster or his wife inherit under the statute? Again, while these parties are wrangling over the matter, the minors arrive at majority, and they take their appeals, and the Superior Court goes forward through all the appeals, saying one day there is a will and the next day there is no will. Will it be said that all these absurd consequences will be obviated by regarding the last decree as alone of binding force? This only removes one absurdity to make room for another. In the first place, to hold that doctrine we must also hold that a solemn decree made by a competent tribunal is of no binding force upon the parties to the record. In the next place, we must hold that the Superior Court may at great expense to the state and the parties litigant, sit and fully and fairly hear a cause, with the certainty that the matters so determined may be again litigated before it at any time. It would make a solemn trial to be a solemn farce. The only reply of the appellant to all this is "*Ita lex scripta est.*" The statute does say that all parties aggrieved may appeal, and it may be conceded that Lancaster was a party aggrieved. Does this language mean that each may appeal for himself and that there may be as many separate and independent trials and determinations in the appellate court as there are appellants? Can the parties each take distinct appeals, and one put his cause to the jury and another to the court and lie by and speculate upon the event? All these absurdities and all this confusion flow from the construction contended for by the appellants. Will it be said that the construction contended for by the appellees is fraught with danger of injustice; that it concludes a man without giving him his day in court; and that under it the weak, the innocent and helpless will be deprived of their just rights unheard? To this there are two answers. Theoretically injustice and inconvenience may result from either construction, but the court must adopt that construction from which the *least* injustice and inconvenience may result. And prac-

tically, we know that no such results need be feared; and when they are produced the legislature will apply the proper remedy. The law contemplates a full and fair hearing *once* upon an appeal, where all parties may be heard if they see fit; and such hearing, inasmuch as it is as effective as a hundred would be, ought to be conclusive. From its nature a will can not be valid and invalid at the same time. Like questions of domicile, of marriage, divorce, or pedigree, once determined, it is determined for all time, against all persons. No stranger, however much his rights may be affected, can attack the validity of a will once judicially established. It is as conclusive as the sentence of a prize court of competent jurisdiction in an admiralty cause. In short, the decree of the Superior Court in Meux's appeal, if not technically a decision *in rem*, has all the characteristics of such a decision, founded upon the same wise reasons, and is binding and conclusive upon this appellant and all other parties whatsoever. And so are the authorities. *Woodruff* v. *Taylor*, 20 Verm., 73; *Deslonde* v. *Darrington's Heirs*, 29 Ala., 95; *Bogardus* v. *Clark*, 4 Paige, 623; *State* v. *McGlynn*, 20 Cal., 270; *Ballow* v. *Hudson*, 13 Gratt., 672, 682; *St. John's Lodge* v. *Callender*, 4 Ired. Law, 343; *Wells* v. *Wells*, 4 T. B. Monr., 153; *Redmond* v. *Collins*, 4 Dev., 430, 439.

2. Did the present appellant have any such notice of the prior appeal as to preclude him from prosecuting this? This is taking his own construction of the statute. If he was not technically a party to the record, he was in fact a party, and had full knowledge that the appeal was pending. There are no equities in his favor. What notice does the statute contemplate? It ought to be presumed that he knew of the former appeal from the moment it was taken. That was a proceeding to which he might have made himself a party at any time. *Bogardus* v. *Clark*, 4 Paige, 623; *Wells* v. *Wells*, 4 T. B. Monr., 153. Ought he to be permitted to lie by and speculate with Meux upon the chances of the former trial? The appellant and probate court made such parties to the Meux appeal as they saw fit. The appellees had a right to presume that this present appellant was not aggrieved by the decree of probate. *Lake's Appeal from Probate*, 32 Conn.,

334. He ought to be estopped from contesting the matter again.

PARDEE, J. On December 30th, 1875, the will of Henry E. Judson, deceased, was presented and proved in the probate court for the district of New Haven, and by that court approved and ordered upon record. On April 28th, 1876, Frances Meux, a sister of the deceased, together with her husband, moved an appeal from the order to the Superior Court; which court, finding the reasons for this appeal to be untrue, dismissed it. After the dismissal and before June, 1877, Esther Lancaster, a sister and heir at law of the deceased, died; her husband, Alfred Lancaster, the present appellant, and two minor children surviving. In the last-named month Alfred Lancaster for himself as tenant by the curtesy, and for his two children, took an appeal from the decree of the probate court of December 30th, 1875, approving the will, to the Superior Court, giving the reasons for his appeal which were given in the first, and therein found to be untrue.

The present appellant was not a party to the first appeal; neither himself nor his wife had notice that the will would be offered for probate on December 30th, 1875, and were neither of them present in the probate court when it was approved. But he had knowledge that an appeal had been taken from the approval, and was present in the Superior Court at the trial thereof and testified in behalf of the appellant therein.

The devisees filed a plea in abatement, and the Superior Court dismissed this second appeal. The appellant filed a motion in error, assigning that the court erred in holding that the dismissal of the first appeal established the will as against him and his children; in holding that the rights which accrued to him after the dismissal of the first appeal did not entitle him to an appeal; and in holding that he was in privity with the first appellant, and is bound by the decision upon that appeal.

The statute (Gen. Statutes, p. 54, sec. 11,) provides that "any person aggrieved by any order, denial or decree of a court of probate, in any matter, unless where it is otherwise

specially provided by law, may appeal to the Superior Court in the county where such court of probate is held; but he shall give bond with sufficient surety, to the state, to prosecute such appeal to effect." And the 12th section provides that "all such appeals by those of full age and present, or who have legal notice to be present, shall be taken only to the next Superior Court; and if they have no notice to be and are not present, then within eighteen months." And the 13th section, that "all appeals by persons who are minors at the time of making the order, denial or decree appealed from, shall be taken within eighteen months after they shall arrive at full age."

The appellees urge that the dismissal of the first appeal by the Superior Court has all the characteristics of a decision *in rem*, and is binding and conclusive upon everybody; and cite decisions of courts in Vermont, New York, California, and several other states, in support of that position. In *Woodruff* v. *Taylor*, 20 Verm., 73, the court, speaking of the probate of a will, says:—" The proceeding is in form and substance upon the will itself. No process is issued against any one; but all persons interested in determining the state or condition of the instrument are constructively notified by a newspaper publication to appear and contest the probate." The Code of Procedure of California permits any person interested in a will which has been admitted to probate to petition at any time within one year for a revocation of probate; upon such petition a citation issues to executors, administrators, legatees within the state, and guardians of minors, to appear and show cause why probate should not be revoked; and if no person within one year after probate contests the same or the validity thereof, the probate is conclusive; saving to infants, married women, and persons of unsound mind, one year after removal of disability. The statutes of New York carefully provide for notice of the offer of a will for probate; and thus all parties are in court before the initial decree is passed. So we apprehend that only in states where this appellant, although not joining upon the record in taking the first appeal, could have become, or would have been made, a party to it by statutory notice, actually or constructively given, would he be held

bound by the action of the appellate court, where that action, as in the present case, has been an adjudication against the appellant, leaving the original probate decree unaffected.

Neither the appellant nor his wife, an heir at law of the testator, had any notice of the time when the will would be presented for probate; neither was present when the probative decree was passed; neither had knowledge that it had passed until a subsequent day, and only knew of the first appeal therefrom as a matter of private information. But their absence and ignorance did not invalidate either the decree or the appeal. Our statute does not concern itself with giving them information as to when the approving decree will be passed; it is however careful to give each person to be affected thereby opportunity to appeal therefrom, provided he acts within the prescribed time; and in behalf of infants the door of appeal is held open for more than twenty years.

By statute the right is individual—distinctly the property of each person; and while there is provision by which those who are interested in upholding any particular decree can in certain cases compel those who desire to reverse it to hasten their action, there is none for a compulsory union of several in an appeal to be taken in the name of one. And in a case where several undertook to preserve to themselves an interest in an appeal allowed to be taken in the name of one only of their number by agreement, this court refused to recognize any right in the appeal in any other than the single appellant of record. In *Lake's Appeal from Probate*, 32 Conn., 331, the marginal note is as follows: "An appeal from a probate decree was taken by one of several heirs equally interested, under an arrangement with the other heirs by which the appeal was to be taken in his name, and they were to share the expense of the litigation. After the appeal was taken, and it was too late to take any other, the appellant settled with the principal appellee, the latter purchasing and taking a conveyance of his interest in the estate; but the settlement was made with no knowledge on the part of the appellee of the arrangement under which the appeal was taken. After the settlement the appellant moved in the Superior Court to withdraw his appeal, which

the other heirs opposed on the ground of the agreement under which it was taken. Held that the appellee, having acted in good faith in making the settlement, the court could not properly refuse to allow the withdrawal." The court said:— "The parties who opposed the withdrawal of this case in the court below claim the right to appear and prosecute the appeal, although the case has been settled by the parties to the record, the appeal discharged and abandoned by the appellant, and all connected with the case have appeared in court and requested that the cause be discontinued.    *    *    Under such circumstances can the agreement avail these parties? It is not pretended that it conferred any legal interest in the appeal, for that could be acquired only by pursuing the course prescribed by the statute; but the claim is that the agreement constituted them parties in equity.    *    *    The appellant was the only party to the record, and we think the appellees had the right to consider that he only felt aggrieved by the doings of the court of probate.    *    *    We think therefore that these parties have failed in equity as well as in law to show a right to appear and prosecute this appeal."

This appellant, upon the principle here recognized, is not to be affected by the determination of the Superior Court upon an appeal which he did not take, and to which he was in no manner a party, and which left the original probate decree in full force. Neither in our statute nor in this judicial determination as to the relation borne by him to that appeal, is there any suggestion that it is conclusive upon him as a final adjudication of the Superior Court upon the subject matter, fixing unalterably and beyond appeal the original probate decree.

From and after the presentation of the will for probate there was a cause pending in the probate court, namely, the settlement of the testator's estate; a cause to be carried to final completion in that court by a succession of orders or decrees. The first appeal subjected the order approving the will to review by the Superior Court, and thus temporarily put it in jeopardy of disaffirmance; but the cause remained no less within the jurisdiction of the probate court. The Superior Court, finding the appeal to be without sufficient

reason, dismissed it; and without substituting any judgment of its own for the original order of the probate court, merely ratified and confirmed it; thereafter, as before, it existed as the creation and by the power of the probate court; the appeal, being futile, left no mark upon it other than the stamp of approval of the Superior Court. Therefore the order existed in 1877 precisely as it had done in 1876; and furnished to the present, the second appellant, the same foundation for an appeal which it furnished to the first; and it will continue subject to appeal, as to all persons not parties to a previous appeal, so long as it stands unreversed, until the statute of limitations in favor of absentees and infants has exhausted itself.

Appeals from orders of the probate court differ from what may be called common law appeals, as from a justice of the peace to a county court, or from the latter to a superior court. In these last the appeal vacates the judgment; the inferior court is emptied of jurisdiction; the entire cause is lifted into the appellate court, and there full and final disposition is made, as if it had been originally commenced therein; there is no turning or looking backward. But the appeal from the probate court is only from a particular order or decree; that being disposed of the cause proceeds in the probate court. The Superior Court determines principles, the probate court embodies them in orders.

We decide here only that, where the probate decree has not been reversed on appeal, it stands open to appeal under the statute in favor of every party in interest who was not made a party to the former appeal and who has not lost his right of appeal under the limitations of the statute. What would be the effect of a reversal of the probate decree by the Superior Court upon the estate and the rights of parties interested we are not called upon to decide, and leave that question to be considered when it shall arise.

There is manifest error in the judgment dismissing the appeal.

In this opinion PARK, C. J., and GRANGER, J., concurred; LOOMIS, J., dissented; CARPENTER, J., did not sit.