JOHN J. DELEHANTY vs. WILLIAM T. PITKIN ET AL.

First Judicial District, Hartford, October Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In this State a Court of Probate possesses only such powers as are expressly or by necessary implication conferred upon it by statute.
Such court has no power to reverse or set aside its decree approving and establishing a will—although such decree may have been obtained by fraud—after the estate has been duly settled and the property distributed pursuant to its provisions.

Argued October 8th, 1903—decided January 26th, 1904.

APPEAL from an order and decree of the Court of Probate for the district of Hartford refusing to admit to probate a certain instrument as the last will and testament of Henry

Kennedy, deceased, taken to the Superior Court in Hartford County and tried to the court, *Shumway, J.*, upon demurrer of defendants to the plaintiff's answer to a plea in abatement and to the jurisdiction; the court sustained the demurrer and dismissed the cause, and the plaintiff appealed. *No error.*

*Lewis E. Stanton* and *Sidney E. Clarke*, for the appellant (plaintiff).

*Charles E. Perkins* and *Arthur F. Eggleston*, with whom was *William Waldo Hyde*, for the appellees (defendants).

TORRANCE, C. J.　In March, 1899, the Court of Probate for the district of Hartford approved a writing, dated December 29th, 1898, as the last will of Henry Kennedy. In January, 1903, Delehanty, the appellant here, offered for probate in said court a writing, dated February 24th, 1899, purporting to be a later and the last will of Kennedy, and petitioned the court in writing to set aside its approval of the former will and to approve of the later will in its stead. For brevity, the will made in December may be called the December will, and the other the February will. The court denied the petition, and from that denial Delehanty appealed to the Superior Court.

In the petition to the Court of Probate Delehanty alleged, among other things, that the original of the February will could not be produced in court, because one of the executors under the December will had obtained possession of the February will and had " by fraud destroyed the same." The petition had annexed to it what was alleged to be a copy of the February will, " as near as the same can be ascertained." In the reasons of appeal filed by Delehanty in the Superior Court, the above allegations were also made, and a copy of said February will was attached to said reasons.

To the reasons of appeal the appellees made no reply, but filed a plea in abatement of the appeal, for want of jurisdiction, to which they annexed a copy of the petition of Dele-

hanty to the Court of Probate. To this plea Delehanty demurred, and the demurrer was overruled (*Roraback, J.*). He then moved to amend his reasons of appeal, and this motion was denied. He then filed an answer to the plea, in which he admitted all the substantial allegations of fact therein made, and set up certain additional facts showing, as he alleged, that the Superior Court had jurisdiction of the appeal, and that he had never had his day in court in respect to the matters set up in the plea and answer. The reasons of appeal were not made a part either of the plea or the answer, nor was a copy of the February will made a part of the plea or answer. The answer contained no allegation that the February will had been destroyed "by fraud," as alleged in the petition and reasons of appeal. The appellees demurred to the answer generally, and to each paragraph of it specifically. The court (*Shumway, J.*) sustained this demurrer upon the grounds stated in it, and, no further pleadings being filed, dismissed the appeal.

Whether the plea and answer, standing alone, contain all the facts essential to a correct decision of the case, may perhaps admit of some doubt; since they do not contain certain allegations of fact made in the petition to the Court of Probate, and in the reasons of appeal, which may have, and are claimed by Delehanty to have, some bearing upon the questions presented upon this appeal. Because of this doubt and for the purpose of determining the case upon its merits, we shall consider all the essential facts in the case, whether found in the petition to the Court of Probate, the reasons of appeal, the plea, the answer, or the judgment.

The essential facts thus appearing upon the record are in substance these : In March, 1899, the Court of Probate approved the December will as the last will of Kennedy, and committed the administration of the estate to the executors named in said will. After this, such proceedings were had in the Court of Probate, that said estate was distributed and finally settled as a testate estate under said will in February, 1900. In January, 1902, certain minor heirs of Kennedy took an appeal from the probate decree approving the December

will, and in their reasons of appeal they alleged that the December will was not Kennedy's last will, because, as was alleged, he had made a later one, known as the February will. This appeal, to which Delehanty was not a party, was tried in May, 1902, and after a full hearing lasting some weeks, the Superior Court decided that the December will was the last will of Kennedy, and that the February will was not his will, and thereupon confirmed the decree from which said heirs had taken their appeal. This judgment, upon appeal to this court, was sustained in December, 1902. *Kirbell* v. *Pitkin*, 75 Conn. 301. Delehanty is a legatee and beneficiary under the February will, but not under the December will. The February will, in its legatees and beneficiaries, and in its legacies given and benefits conferred, differs very much from the December will, and it wholly revokes that will. Delehanty had no knowledge of the existence of the February will until at least a year after the settlement of Kennedy's estate under the other will. The February will is the real last will of Kennedy. In March, 1899, one of the executors under the December will obtained possession of the February will, " and by fraud destroyed the same." These are in substance the essential and controlling facts in the case, which must be taken to be admitted upon the record, in considering the questions raised upon this appeal.

Upon them the appellees claimed that the Court of Probate had no power to try the questions presented in Delehanty's petition, and consequently that the Superior Court, as a court of probate, had no power to try the questions presented in the reasons of appeal. The court sustained this claim and dismissed the appeal.

It is not, perhaps, clear from the record, whether the refusal of the Court of Probate to grant the petition of Delehanty proceeded on the ground that he had failed to prove the existence of a later will, or on the ground of want of power to set aside the former decree ; but as all the parties before us have assumed that such refusal proceeded on the latter ground, we also will assume that to be the fact. As the February will is radically different from, and expressly

revokes, the December will, the approval of the former necessarily involves the disapproval of the latter and the reversal of the decree approving the latter, and of all decrees and orders made in the settlement of the Kennedy estate under the December will, so far as they are inconsistent with the settlement of the estate under the February will.

It will thus be seen that the real question in the case, stripped of all its wrappings, is this: Upon the facts as they appear of record, had the Court of Probate power to reverse or set aside the decree approving the December will? If it had, the judgment below should be reversed, and if it had not, that judgment should stand.

So far as we know this is a question of first impression in this State, and as the solution of it depends largely, if not entirely, upon our own statutes and decisions, they alone will be considered in discussing it. Such a question was recognized but not decided in *Potwine's Appeal*, 31 Conn. 381. In discussing this question, it must be borne in mind that our courts of probate possess only such powers as are expressly or by necessary implication conferred upon them by statute; *Hotchkiss* v. *Beach*, 10 Conn. 232, 238; *Potwine's Appeal*, 31 id. 381, 382; *Hall* v. *Pierson*, 63 id. 332, 341; and also that, within their jurisdiction, their decrees, while unreversed, are as conclusive and binding as those of any other court; *Judson* v. *Lake*, 3 Day, 318; *Mallory's Appeal*, 62 Conn. 218, 220; and cases hereinafter cited as to the remedy by appeal. The decree approving the December will, then, had all the elements of a final judgment. Until set aside in some lawful way, all the facts necessary to support it are to be taken as true beyond contradiction or dispute; and among those facts are the following: that the December will was the *last* will of the testator; that it was unrevoked at his death; that he had the requisite capacity to make it; and that it was made and attested as the law required. That it was his last will, and that it was unrevoked at the time of his death, are facts as conclusively established by the decree of approval as is the fact that he had the legal capacity to make it. *Dickinson* v. *Hayes*, 31 Conn. 417. Now the

power to set aside a decree of this kind, after the estate is settled, is not in express terms anywhere given to our courts of probate; but the appellant claims that it is given to them by necessary implication. This claim is based upon two facts: (1) that to those courts is given exclusive original power to probate wills; (2) that they are empowered (General Statutes, § 191) to "make any lawful orders, or decrees," necessary "to carry into effect the power, authority, and jurisdiction" so conferred. Section 191 is merely an affirmance of a power already given in the general power to probate wills; for that general power necessarily carries with it the incidental power to do all things necessary to carry the general power into effect. The argument is this: that the exclusive original power to pass a decree approving or rejecting a will, coupled with the incidental power to do all things necessary to carry the general power into effect, necessarily carries with it the power to set aside such decrees. In other words, the claim is, that the power to pass a decree by necessary implication carries with it the power to set aside such decree. If the legislature had not given to some other tribunal the general power, on appeal, to modify, set aside, or confirm probate decrees, this reasoning might perhaps command our assent. It is valid, however, only on the supposition that the legislature has not given such power to some other tribunal; a supposition that is not true, for our laws give to the Superior Court, on appeals from probate, ample power to set aside, modify or confirm probate decrees. The conclusion that the Court of Probate has by implication a like general power to set aside its own final decrees, runs counter to all our legislation and decisions with reference to the powers of that court. It is to be borne in mind that this claimed power, if it exists, is practically without regulation or limitation. No law governs the manner of its exercise, nor the time within which it may be exercised. It may be exercised at any time pending the settlement of an estate, or long after the final settlement thereof, and after the right of appeal no longer exists in favor of anybody; and under it the Court of Probate may not only set aside its own

final decrees, but also final decrees of the Superior Court sitting as a court of probate upon appeal. If such a power exists to-day, it has existed since the origin of courts of probate, for they have always had exclusive original power over the probate of wills. Looking at our legislation and decisions upon the powers of probate courts, we think they have no such unregulated and unlimited power to modify, reverse or set aside, either their own final decrees, or those of the appellate probate court. In the first place, the existence in such courts of an unlimited power to set aside their own decrees is inconsistent with the legislation conferring upon them, from time to time, a limited power to do this. In *Potwine's Appeal*, 31 Conn. 381, decided in 1863, and .in *Mix's Appeal*, 35 Conn. 121, decided in 1868, certain questions were raised, and some of them left unsettled, regarding the power of the Court of Probate over its own decrees; and in 1869 the legislature provided that "any Court of Probate may modify or revoke any order or decree made by it *ex parte*, before any appeal therefrom, and, if made in reference to the settlement of any estate, before the final settlement." Public Acts of 1869, Chap. 110 (General Statutes, § 203). Why confer this limited power over *ex parte* orders in this guarded way, if the court already possessed the unlimited power claimed over all its orders? Again, in 1886 an Act was passed the provisions of which are now embodied in § 314 of the General Statutes (Public Acts of 1886, Chap. 97). That Act, among other things, provides that when the Court of Probate has approved a will, and it subsequently appears "pending proceedings before it" for the settlement of the estate under that will, that such will has been revoked, the court shall have power "to revoke, annul, and set aside" the decree approving said will, and any other decree made in the settlement of the estate under said will. Why should the legislature expressly make these successive and carefully guarded and limited grants of power, if the Court of Probate already had the unlimited power over their decrees claimed by the appellant? This legislation, specifically conferring limited power over decrees and carefully

guarding its exercise, was wholly unnecessary if the courts of probate already possessed the power of control over their decrees contended for by the appellant.

In the next place, the existence of the power in question is inconsistent with our legislation giving the right of appeal from probate. " It is a principle of our law, coeval with our first municipal regulations on this subject, that the settlement of all estates, both real and personal, of deceased persons, appertains to the Court of Probate within whose jurisdiction the estate is; and an appeal lies from every order, sentence or decree of this court in relation thereto, to the Superior Court; and from this last court, by motion for new trial or writ of error, the cause may be brought to the Supreme Court of Errors. No course could be devised, perhaps, better adapted to effect a *speedy* settlement of estates, an important object in view of our law." *Pinney* v. *Bissell*, 7 Conn. 21, 23. Our legislation has always favored the speedy settlement of estates, and to that end has carefully limited the time within which such appeals must be taken; but what avails that limitation if the power claimed here exists? Under that power a party, long after his right of appeal is gone, may litigate in the Court of Probate the questions he is precluded from litigating upon appeal, and thus defeat the object of the legislature in limiting the time for appeal. Again, if a will, rejected by the Court of Probate, is established upon appeal by the Superior Court, and the estate settled under it, is there anything to prevent the Court of Probate, under this claimed power, from subsequently overthrowing that will in favor of a later one? and is there anything to prevent the pendency of proceedings in the Superior Court and in the Court of Probate, at the same time, for the reversal of the same probate decree? No such conflict of jurisdiction has ever arisen so far as we know; and no such question, as is now made in this case, has ever been raised in this court before, save, perhaps, in *Potwine's Appeal*, 31 Conn. 381. These facts are in themselves a strong argument against the existence of any such power as is claimed in this case.

In addition to the reasons given, the legislature, having fully safeguarded the rights of parties aggrieved by probate decrees, by ample provisions for their relief by way of appeal to the Superior Court, has in express terms provided that, save in cases excepted by statute, probate decrees shall not be set aside " save by appeal." The words of the statute are as follows : " No order made by a court of probate upon any matter within its jurisdiction shall be attacked, collaterally, except for fraud, or set aside save by appeal." Public Acts of 1885, Chap. 110, § 6 (General Statutes, § 194). This statute must of course be read in connection with the sections hereinbefore referred to (§§ 203, 314), giving courts of probate a limited power to modify or revoke their own decrees pending the settlement of an estate ; and when so read, it does, we think, expressly deny to probate courts any power to set aside their own decrees, save in the cases where that power is given to them in express terms. That this has always been the law upon this subject, and that the statute (§ 194) is merely declaratory of that law, is affirmed in *Mallory's Appeal*, 62 Conn. 218, 221.

This court, whenever it has spoken upon this matter, has held that, save in the cases excepted by statute, a final probate decree can be set aside or reversed only upon appeal. We cite some of the numerous cases to that effect. " The statute, having provided for the correction of any erroneous decree, by appeal, unless that remedy is taken, the decree must stand." *Gates* v. *Treat*, 17 Conn. 388, 392. " The application to the Superior Court, as a court of chancery, to set aside the distribution, in this case, cannot be sustained. The subject was a matter entirely within the jurisdiction of the Court of Probate, and its decrees must stand, until set aside by an appeal." *Bissell* v. *Bissell*, 24 Conn. 241, 246. " This order of the Court of Probate has never been reversed, but it now remains in full force, and we think it furnishes full protection to the administrator, and a conclusive answer to this suit on the probate bond, until it shall be regularly set aside on appeal taken from the order to the Superior Court." *Kellogg* v. *Johnson*, 38 Conn. 269, 271. " We are

not disposed to question the proposition that a decree of a Court of Probate, unless appealed from, is final and conclusive upon the parties, as to all matters within its jurisdiction which are necessarily involved in the issue." *Mix's Appeal*, 35 Conn. 121, 122. " All these decrees were within the admitted jurisdiction of the probate court. These were decrees which could not be attacked collaterally. Not appealed from, they were, and are, conclusive." *Shelton* v. *Hadlock*, 62 Conn. 143, 153. " That the decree of a Court of Probate having jurisdiction, while unreversed, is final and conclusive as to all relevant matters embraced therein, is unquestionable. Indeed, that 'no order made by a Court of Probate upon any matter within its jurisdiction shall be attacked collaterally except for fraud, or set aside save by appeal,' is now the direct mandate of the statute, . . . which was made in affirmance of the existing common law." *Mallory's Appeal*, 62 Conn. 218, 220. " No such decree can be attacked except by appeal within the time limited." *State* v. *Blake*, 69 Conn. 64, 78. There is nothing decided in any of our cases inconsistent with the views expressed in the above cited cases.

The appellant, in support of his contention, places some reliance upon the case of *Johnson's Appeal*, 71 Conn. 590; but the important question raised in the present case was neither raised nor considered in that case. In that case the Court of Probate had settled and distributed the estate as an intestate estate. Eighteen months afterwards a will was discovered, admitted to probate, an administrator with the will annexed was appointed, and the court proceeded to settle the estate under the will, and recalled the previous distribution. All this was apparently done by the consent of all concerned, and no question was raised with reference to it. The only questions made, argued, considered, or decided, in this court in that case, related to the statutory power of the Court of Probate, and of the Superior Court sitting as a court of probate, to authorize administrators and conservators to compromise claims.

From this review of our statutes and decisions relating to

the power of courts of probate over their final decrees, and to the provisions for appeal from those decrees, we are of opinion that the power contended for by the appellant does not exist; and therefore that the Superior Court was justified in dismissing the appeal from probate. In reaching this conclusion we have left out of view the charge of fraud which the appellant claims to be in the case, and have regarded the case as one in which there was no charge of fraud. The appellant contends, in effect, that the fraud charged in this case gives the Court of Probate a power to set aside its final decree which it would not otherwise possess; and the remaining question is whether that contention is correct. The only charge of fraud in the case is made in the petition to the Court of Probate, and in the reasons of appeal, and it is made in both in these same words: "The said will of February 24th, 1899, cannot now be produced in court. On or about March 13th, 1899, said William T. Pitkin obtained possession of said will of February 24th, 1899, and by fraud destroyed the same." Pitkin was one of the executors appointed under the December will. The above allegation seems to be an excuse for the non-production of the original February will, rather than a charge of fraud. Assuming, however, without deciding, that fraud is charged in the case, and that the above allegation sufficiently charges it, what is the nature of the fraud charged? At most it is, in effect, that Pitkin, with some fraudulent intent, or for some fraudulent purpose, destroyed the February will. With what specific intent, or for what specific purpose, he did this, is not charged. It is not charged that his act ever had or ever will have any other effect than what results from the mere destruction of the will; and it is not charged that this worked or will work the appellant or anybody else any harm. The appellant appears to have had no difficulty in procuring a copy of the February will covering nearly four pages of the printed record. It is nowhere alleged that the other executor under the December will, or any one save Pitkin, participated in the so-called fraud, or knew of its existence. It is nowhere alleged that the fraud

of Pitkin was used to influence or affect the action of the Court of Probate in passing the decree approving the December will; or that such decree was obtained by any fraud practiced upon that court or upon any one else by Pitkin or any other person. The only fraud that in reason can avail the appellant, in support of his present claim, is some fraud that was used in procuring, and which was the efficient cause in procuring, the decree approving the December will; and no such fraud is alleged or appears upon the record. But even conceding that such a fraud is alleged and admitted, it does not follow that the Court of Probate can grant relief for that fraud, by setting aside the final decree obtained by means of it. For the reasons already given in the first part of this opinion, we think the Court of Probate in this case had no power to set aside its decree approving the December will, even if it had been obtained by fraud. A decree so obtained may, under the statute, be attacked collaterally, but the proceeding before the Court of Probate, assuming that fraud was charged in it, was not a collateral, but a direct, attack. Its main object was to set aside the former final decree and to leave the probate record as if such decree had never been passed. It was not an attack upon it which, if successful, would avoid its full effect for some limited purpose and still leave the decree in full force for all other purposes; but it was one which, if successful, would annihilate the decree for all purposes. A direct attack upon a judgment, if successful, wipes it out of existence; while a collateral attack upon it, if successful, leaves it in full force, except as against the party who collaterally attacks it and as regards the case in which it is so attacked. Clearly the proceeding before the Court of Probate was a direct attack upon the decree in question, seeking to have it set aside by the Court of Probate for fraud; and this, we hold, the Court of Probate had no power to do even for fraud. If such a power in the courts of probate, as the appellant contends for, is necessary for the due administration of justice, the legislature can easily confer it upon them, and hedge its exercise about with such restrictions as will not seriously

interfere with the final and reasonably speedy settlement of estates.

It is claimed that the conclusion reached works a great injustice in a case like the present. It is said that although the appellant was a party who was interested in the decree approving the December will, and had the right to appeal therefrom because he was a legatee under the later will (*Buckingham's Appeal*, 57 Conn. 544), yet he was ignorant of that fact, through no fault of his own, until the time to appeal had passed. Our statutes limiting the time when probate appeals may be taken, run against parties whether they are informed of their rights or are innocently ignorant of their rights. Their absence from court when the decree is passed and their ignorance of the decree does not stop the running of the statute. " Our statute does not concern itself with giving them (i. e. parties) information as to when the approving decree will be passed; it is, however, careful to give each person to be affected thereby opportunity to appeal therefrom, provided he acts within the prescribed time ; and in behalf of infants the door of appeal is held open for more than twenty years." *Lancaster's Appeal*, 47 Conn. 248, 257. After the passage of the decree approving the December will, the appellant had the right to appeal therefrom, and the door of appeal remained open to him one year thereafter, and no more. The fact that he was ignorant of his rights during this time makes no difference. That our statutes limiting the time for taking probate appeals would sometimes work a hardship in this way, as against parties innocently ignorant of·their rights, must have been within the knowledge of the legislature when it passed them ; for it makes no exception in favor of such persons. If cases like the one at bar should become of frequent occurrence, the legislature may be trusted to apply some appropriate remedy; but the mere existence of the hardship claimed does not of itself give the Court of Probate the power contended for.

In the case at bar we simply decide that the Court of Probate, upon the facts as they appear of record, had no power

to do what the appellant asked it to do, and that the Superior Court did not err in dismissing the appeal.

In this view of the case it is unnecessary to consider the other matters assigned for error in the reasons of appeal.

There is no error.

In this opinion HAMERSLEY, HALL and PRENTICE, Js., concurred.

BALDWIN, J. (concurring in the judgment, but dissenting from part of the foregoing opinion).   I dissent from the declaration made in the foregoing opinion that courts of probate have no power to set aside their own decrees, save in the cases where that power is given to them in express terms, and from the conclusion upon that ground that the Court of Probate could not admit the February will to probate, even if it was established that the decree admitting the earlier will to probate was procured by the fraud of one of the executors in destroying the later one.

It cannot be, in the nature of things, an uncommon thing that a man should die leaving a will, the existence of which is unknown to the parties in interest and for a time is not discovered.   Most lawyers who have been long in practice have known such cases to occur.   If, under such circumstances, an administrator be appointed on due notice, and the estate adjudged intestate, this ought not, in my judgment, to prevent the court which made these decrees from revoking them, under its general statutory authority and jurisdiction, should a will subsequently be found.   General Statutes, § 203, however, would not authorize this, for it applies only to the revocation of *ex parte* orders.   No other statute would be specially applicable to such a case except that allowing appeals to the Superior Court from any probate order; and it might well be that the time for any party aggrieved to appeal from the grant of administration had elapsed.   Still greater would be the hardship, if the reason why the will was not found was that it had been fraudulently suppressed or destroyed by those interested in denying its effect.

In the judgment rendered I concur, on the ground that the February will could not be admitted to probate without setting aside the probate of the December will, and that the latter, having been affirmed by the Superior Court, could not be so set aside.