ALICE McNAMARA MILLER v. ANNA G. McNAMARA, ADMINISTRATRIX

SUPERIOR COURT          FAIRFIELD COUNTY          FILE No. 71918

Memorandum filed March 23, 1948

*Light, Light & Paris,* of Norwalk, for the Plaintiff.

*Edward G. Reynolds,* of New Haven, for the Defendant.

COMLEY, J. In 1934 Thomas J. McNamara engaged Attorney Thomas J. Ryan of New Haven to prepare his last will and testament. After the document had been executed it was left in the custody of Mr. Ryan who deposited it in his office safe. Thomas J. McNamara died on January 2, 1936. Mr. Ryan did not learn of his death until Decmber, 1940, and then only through the fortuitous circumstance that another of his clients, who was a neighbor of Mrs. McNamara, happened to mention the fact to him.

In the meantime, Mrs. McNamara who is the defendant in this action and who at the time knew nothing about the will then reposing in Mr. Ryan's office, took out administration upon her deceased husband's estate. On October 9, 1936 she was found by the Court of Probate to be the sole heir-at-law and, shortly thereafter the estate was distributed to her.

When Mr. Ryan learned of Thomas J. McNamara's death in December, 1940, he immediately communicated with the defendant and told her of the existence of the will which he had drawn. She and Mr. Ryan forthwith went to Norwalk where Alice McNamara Miller and Helen Barry Halloran, two of the legatees named in the will, resided. At that time the defendant told these two legatees that she would see to it that the will was probated and its provisions carried into effect. She also on that day signed a waiver of notice of an application for the probate of the will prepared by Mr. Ryan who was the executor named therein.

When this application was presented to the judge of probate, he refused to accept it on the ground that his court had no jurisdiction since the estate had been administered and distributed as an intestate estate. At a subsequent interview with the defendant, the judge of probate told her in substance that she need not worry about the will and need do nothing more about it. She then changed her mind about carrying out the provisions of the will and has since retained as her own the estate which was distributed to her.

Several of the legatees named in the will consulted counsel after learning of the existence of the will in December, 1940.

In January, 1942, a writ and complaint were prepared in Mr. Ryan's office in which three of the legatees were named as plaintiffs but this action was never commenced. The matter then dragged on for almost four years until, on December 31, 1945, the present suit was instituted by Alice McNamara Miller, who was a sister of Thomas J. McNamara and a legatee in the will. During the pendency of the action she died and her son and administrator, William Joseph Miller, has been substituted as party plaintiff.

The relief sought in the present action is a judgment setting aside the orders and decrees of the Court of Probate in the earlier administration of the estate and enjoining the defendant from setting up those orders and decrees as a defense to any proceedings that may thereafter be taken in the Court of Probate for the probate of the will and the settlement of the estate.

The chief issue of fact between the parties is whether the defendant knew of the existence of the will at the time of her husband's death in 1936 and was thus guilty of fraud in concealing the fact and in proceeding with the settlement of the estate as she did. There was considerable testimony on both sides of this issue and there are some circumstances which give rise to the suspicion that, even though the defendant had never seen the will or a copy of it, she might have had reason to believe that her husband had intended to make a will benefiting some of his own blood relations. However, suspicion of fraud is not proof of fraud. In *Shaub* v. *Phillips, Inc.*, 117 Conn. 54, 58, the Supreme Court quotes with approval this earlier statement in *Basak* v. *Damutz*, 105 Conn. 378: "Fraud is not to be presumed, but must be strictly proven. The evidence must be clear, precise and unequivocal."

I find that the defendant did not fraudulently conceal the existence of the will or any other facts which would have led to the earlier discovery of the will. Most, if not all, of the evidence claimed by the plaintiff to prove that she knew, or had reason to know, of the existence of a will consists of the recollections of witnesses about the content of conversations that took place more than seven years before the trial of this case. This evidence falls far short of the degree of proof necessary to establish this serious charge of fraud.

The defendant claims that, if there was no fraud, then the plaintiff is without legal remedy in view of the provisions of § 646g of the 1943 Supplement which provides, in part, as follows:

"All proper orders, judgments and decrees of courts of probate, rendered after due notice and from which no appeal is taken, shall be conclusive and shall be entitled to full faith, credit and validity and shall not be subject to collateral attack, except for fraud."

This claim is unsound. In the first place, the plaintiff is not making a collateral attack on the decrees of the Court of Probate. He is making a direct attack by seeking what is described in *Folwell* v. *Howell,* 117 Conn. 565, 572, as a "judgment of the Superior Court that the decree is null and void and that it be set aside, and the defendants be restrained from setting it up as a defense to further proceedings in the Court of Probate. . . ." While it is true that the *Folwell* case involved a probate decree procured through fraud, the court based its decision on the broad ground, stated at page 568, that "in all cases, where by accident, mistake, fraud or otherwise, a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice, and it is, therefore, against conscience that he should use that advantage, a court of equity will interfere and restrain him from using the advantage which he has thus improperly gained."

In the instant case, the plaintiff has not succeeded in proving fraud but he has established a case of accident or possibly mistake which is not disputed by the defendant. That there was in existence on January 2, 1936, when Thomas J. McNamara died, a document purporting on its face to be his last will and testament, is conceded. Due to a strange and unusual combination of circumstances, this document did not come to light until December, 1940. Whether or not it is in fact his last will and testament and whether or not it is entitled to probate as such are issues which have never been litigated or determined and never can be unless the Superior Court grants a remedy, for the Court of Probate has no power to set aside its earlier decrees finding that the deceased died intestate and distributing the estate. *Delehanty* v. *Pitkin,* 76 Conn. 412; *Gill* v. *Bromley,* 107 Conn. 281.

It is, therefore, my conclusion that as of December 19, 1940, the plaintiff's intestate, as a legatee under the purported will, had the right to obtain an equitable decree from this court which would have enabled her to take proceedings in the Court of Probate for the determination of her rights under the will.

However, she did nothing to protect her equitable rights until December 31, 1945 when the papers in the present action, returnable on the first Tuesday in February 1946, were served upon the defendant. The defendant claims that the plaintiff was guilty of laches.

"Laches in legal significance is not mere delay but delay that works a disadvantage to another." *Mills* v. *Mills,* 119 Conn. 612, 621.

"A mere delay or acquiescence will not defeat the remedy unless there has been such a delay in the assertion of the claim as naturally to prejudice the party against whom the claim is set up." *Sleeping Giant Park Association, Inc.* v. *Connecticut Quarries Co., Inc.,* 115 Conn. 70, 79.

In 2 Pomeroy, Equity Jurisprudence (5th Ed.) § 419d, the rule is stated as follows:

"While statements are to be found in some of the cases intimating that unreasonable delay, and mere lapse of time, independently of any statute of limitations, constitute a defense in a court of equity, the generally accepted doctrine appears to be that laches is not like limitation a mere matter of time, but is principally a question of the inequity of permitting a claim to be enforced, this inequity being founded on some change in the condition or relation of the property or the parties. Where no one has been misled to his harm in any legal sense by the delay, and the situation has not materially changed, the delay is not fatal."

There can be no question but that a very substantial period of time elapsed between the time when the plaintiff first learned of the existence of the will and the time when the present suit was commenced. Had the defendant shown any substantial prejudice resulting to her from the delay, it would be difficult for the plaintiff to escape the charge of laches. However, the defendant has not shown any such prejudice. So far as appears, she is now fully in possession and enjoyment of the estate which came to her and has enjoyed the use and income from it. She has not attempted to show that any unusual hardship, beyond that which would have existed at any time, will result to her if her husband's last will and testament is successfully offered for probate. On the other hand, the equities in favor of the plaintiff are strong and weighty. His mother was named legatee in a will which for several years was kept from probate without

fault on the part of anyone. When the will was discovered, the defendant assured the interested parties that she would see that its terms were carried out. Then she suffered a change of heart and now opposes any attempt to effectuate the apparent wishes of her late husband. She offers no excuse for this except her own conception of her legal rights and she makes no effort to prove her present ability to meet or to resist the plaintiff's demand is substantially different than it was in December, 1940, when the plaintiff's course of action came into existence. Under all the circumstances I find that the plaintiff's delay in bringing suit was not laches.

The defendant also claims that the action must fall in view of the provisions of § 4909 of the General Statutes that no will shall be admitted to probate after ten years from the decease of the testator. This claim is without merit in view of the saving clause in the statute which reads: "unless the court of probate upon written petition and after public notice and hearing shall find . . . that said will should be admitted to probate." It may well be that if and when the will of Thomas J. McNamara is offered for probate, the court may find that it should not be admitted; but that possibility should not preclude the plaintiff from obtaining such relief in this court as will enable him to bring the matter before the Court of Probate for hearing and determination.

Judgment is rendered for the plaintiff and the parties are directed to submit to the court a decree which will enable the proper parties to institute proceedings in the Court of Probate for the District of New Haven for the probate of the will. Beyond that the decree should not go.