ROBERT W. OWENS, JR., ET AL. *v.* HAZEL J. DOYLE,
EXECUTRIX (ESTATE OF MARY E. MORRIS, JR.)

KING, C. J., MURPHY, ALCORN, COMLEY and LEIPNER, Js.

Argued October 8—decided December 2, 1964

*Joseph L. Melvin,* for the appellants (plaintiffs Eye Surgery Fund, Inc., et al.), and *Rodney E. Eyster,* for the appellant (plaintiff Berkshire Schools).

*John L. Calvocoressi,* with whom was *DeLancey Pelgrift,* for the appellee (defendant).

KING, C. J. Mary E. Morris, Jr., died in Beverly Hills, California, on July 10, 1959, at the age of eighty-five. On September 10, 1959, the Probate Court for the district of Westport, Connecticut, admitted to probate her will, dated November 10, 1955, and two codicils thereto, one dated July 19, 1957, and the other, November 8, 1958. On December 15, 1959, after unsuccessfully attacking the jurisdiction of the Westport Probate Court on the ground that the decedent was a domiciliary of California, the defendant, Miss Hazel J. Doyle, the decedent's nurse and companion, filed an application for the probate of an unattested holographic instrument dated December 2, 1958, which her application described as a codicil. The defendant filed an amended application for probate, dated March 18, 1960, in which she described the unattested holographic instrument as a will and further asked that the court revoke so much of its order of September 10, 1959, admitting to probate the earlier will and codicils, as was inconsistent with the holographic

instrument. On May 1, 1962,[1] the Probate Court revoked its order of September 10, 1959, and admitted to probate as a will the holographic instrument of December 2, 1958, and those portions of the earlier will and codicils which it found incorporated by reference into the holograph. The residuary legatees, hereinafter called the plaintiffs, appealed to the Superior Court, which affirmed the order of the Probate Court and rendered judgment dismissing the appeal. This appeal is from that judgment.

## I

The plaintiffs' first claim is that the unattested holograph, quoted in the footnote,[2] is a codicil, and not a will as the court below found. Although the decedent entitled the holograph "my last will", whether a testamentary document is a will or a codicil is not determined by the designation given it by the testatrix but by its form and content. *Matter of Diez*, 50 N.Y. 88, 92; *Bingaman's Estate*, 281 Pa. 497, 506, 127 A. 73. The distinguishing feature of a codicil is that it is an addition to, or a qualification of, a will. *Bingaman's Estate*, supra, 507. That is, a

---

[1] The delay of over two years was caused by an appeal taken by Robert W. Owens, Jr., executor under the will of November 10, 1955, from the order of the Probate Court setting a hearing on the admission to probate of the holographic instrument. This appeal was finally erased.

[2] "This is my last Will

I dispose of my property as follows

One fourth of all of my estate shall go to Hazel J Doyle.

The balance of my estate shall be disposed of as in the former Will I have made.

All taxes are to be paid by said estate & not charged against the beneficiary named herin [sic].

I name Hazel J Doyle my executrix.

MARY E. MORRIS JR.

December 2 1958"

codicil does not entirely revoke the will so as to stand alone as a complete dispositive instrument. Black, Law Dictionary (4th Ed.). The obvious two-fold purpose of the decedent in executing the holograph was to increase her bequest to the defendant and to dispose of the balance of her estate in the manner provided in the earlier testamentary instruments. Since the holograph does not disclose the dispositions made in the earlier instruments, it is not a complete dispositive instrument and, therefore, is a codicil rather than a will. The court below was in error in holding the codicil to be a will, and this error in turn permeated and made erroneous other portions of its decree.

## II

The holographic codicil was executed in California and, even though unattested, was valid under the California Code. Cal. Prob. Code § 25. Had this codicil been executed in Connecticut, it could not have been admitted to probate because "[n]o will or codicil shall be valid to pass any estate unless it is . . . attested by three witnesses". General Statutes § 45-161. The defendant's claim, which was sustained by the court below, was that the codicil should be admitted under the so-called "borrowing provision" of the same statute, which provides that "any will executed according to the laws of the state or country where it was executed may be admitted to probate in this state."

The plaintiffs claim that the use of the phrase "will or codicil" in one part of § 45-161 and the use of the word "will" in another part of the same statute demonstrated a legislative intent to differentiate between the two instruments. From this argument the plaintiffs make the final claim that the "borrow-

ing provision" of § 45-161 applies only to a will and, therefore, has no application to a codicil such as the holographic codicil in this case.

In the first place, in many other statutes[3] the word "will" is used where the context strongly suggests that "codicil" may also have been intended. Furthermore, it is incorrect to treat § 45-161 as a single section. What is now § 45-161 first assumed its present form in § 2 of chapter I of title XX, page 402, of the Revision of 1866.[4] That section was a combination, first made in that revision, of § 2 of chapter I of title XIV, page 346, of the Revision of 1849, which prescribed the formal requisites of the due execution of a "will or codicil", with chapter VII of the Public Acts of 1863, which provided for the admission to probate, in Connecticut, of any "will" executed out of the state in conformity with the laws of the state of execution. The two parts were combined by the revisers without substantial change. Thus, there is no support for the claim that in this single section, which results from the combination of two separate enactments, any significant differentiation was intended between "will or codicil" on the one hand and "will" on the other hand. On principle, no reason has been suggested for our admitting to probate a foreign will but

---

[3] Such statutes include §§ 45-160, 45-163, 45-166, 45-168—45-171, 45-174—45-177, 45-179, 45-181—45-185, 45-187, 45-189 and 45-192.

[4] "All wills shall be in writing, subscribed by the testator, and attested by three witnesses, all of them subscribing in his presence; and no will or codicil shall be valid to pass any estate, real or personal, unless it shall be so executed; but no will of personal estate, made before the twenty-seventh day of June, 1848, shall be invalid by reason of not being so attested; and all wills executed out of this state, according to the laws of the state or country, where made or executed, may be admitted to probate in this state, and shall be valid and effectual to pass any estate of the testator, real or personal, situated in this state. "

excluding from probate a foreign codicil. We hold that § 45-161 applies equally to foreign wills and foreign codicils.

### III

If a probate decree has been rendered on proper notice, and no appeal has been taken, the decree may not be set aside or modified by the Probate Court except under express statutory authority. General Statutes § 45-20; *Delehanty* v. *Pitkin,* 76 Conn. 412, 416, 56 A. 881; *Haverin* v. *Welch,* 129 Conn. 309, 316, 27 A.2d 791; see also *Adams* v. *Williamson,* 150 Conn. 105, 109, 186 A.2d 157.

The Probate Court concluded that the holographic codicil was a revocatory will within the meaning of § 45-186,[5] and that as such it formed a proper basis on which to annul the September 10, 1959, decree and thereafter to proceed with the settlement of the estate.

The plaintiffs claim that even if the holographic codicil was admissible to probate under § 45-161, in the same way as if it had been a will, it was not a revocatory instrument within the meaning of § 45-186 because it was not completely revocatory of the original will. This claim is without merit. There is no more justification for considering that the legislative intent in the use of the word "revoked" in

---

[5] "Sec. 45-186. COURT MAY ANNUL ORDERS PASSED UNDER A REVOKED WILL. When it appears to any court of probate, pending proceedings before it for the settlement of the estate of a deceased person as a testate estate, that the will under which such proceedings were commenced and have been continued had been revoked by the testator by a subsequent will . . . , such court shall have power to revoke, annul and set aside any order or decree proving or approving the will so revoked and any other order or decree made and passed by such court in the settlement of such estate under such will. Such court may thereafter proceed with the settlement of such estate under a subsequent will if there is one . . . ."

§ 45-186 was restricted to "total" or "complete" revocation than for considering that it had such an intent in the use of the word "revoked" in § 45-162. The latter section provides for the manner in which a will may be revoked. In the relevant part that section states: "No will or codicil shall be revoked in any other manner except by burning, canceling, tearing or obliterating it by the testator or by some person in his presence by his direction, or by a later will or codicil." Thus, a will may be revoked by a later codicil. Since a codicil is by definition not completely revocatory, the word "revoked" in § 45-162 must embrace both complete and partial revocation. There is nothing in § 45-186 to suggest any different meaning. Furthermore, it has been virtually settled that, by cancelation, a testator can effect a valid partial revocation of a will or codicil. *Miles' Appeal,* 68 Conn. 237, 244, 36 A. 39; see also *Harchuck* v. *Campana,* 139 Conn. 549, 551, 95 A.2d 566. Such a holding would be impossible if the word "revoked" in § 45-162 were to be construed as limited to a complete revocation. We conclude, therefore, that the holographic codicil, even though not completely revocatory, is within the scope of § 45-186.

The decree of the Probate Court dated May 1, 1962, was erroneous (1) in that it referred to the third codicil as a will; (2) in that it should have admitted to probate the third codicil dated December 2, 1958, as a codicil rather than as a will; and (3) in that it should have revoked only so much of the order and decree of September 10, 1959, as was inconsistent with the third codicil. See cases such as *First National Bank & Trust Co.* v. *Baker,* 124 Conn. 577, 583, 1 A.2d 283. Since the Superior Court, in its judgment, dismissed the appeal from probate, it in

effect affirmed the judgment of the Probate Court, and this judgment in turn was erroneous in the respects heretofore pointed out.

## IV

The plaintiffs also claim that the defendant is barred from proceeding under § 45-186 because she did not exercise her right to appeal from the probate decree of September 10, 1959, or from the order of November 20, 1959, dismissing her challenge to the jurisdiction of the Probate Court. This claim must fail because the exercise of the right to appeal is nowhere made a condition precedent to proceeding under § 45-186. Indeed, one obvious purpose of § 45-186 is to provide a remedy where the time to appeal has expired. The only limitation put on this remedy under § 45-186 is the completion of administration, which has not taken place.

The plaintiffs further allege that the delay of the defendant in presenting the holographic codicil for probate should bar her right to have it admitted. Delay alone is not sufficient to bar a right. *Mills* v. *Mills,* 119 Conn. 612, 621, 179 A. 5; *Wells* v. *Carson,* 140 Conn. 474, 477, 101 A.2d 297; *Sarner* v. *Fox Hill, Inc.,* 151 Conn. 437, 444, 199 A.2d 6. Delay, if unreasonable, is one element of laches; *Sarner* v. *Fox Hill, Inc.,* supra; or, if justifiably relied on, is one element of estoppel. *Franke* v. *Franke,* 140 Conn. 133, 139, 98 A.2d 804. It may also be evidence of an election. *Vitale* v. *Gargiulo,* 144 Conn. 359, 365, 131 A.2d 830. The court below found that there was no laches, that there was no estoppel, and that there was no election. Since the plaintiffs have not attacked these findings, there is no theory on which they can take advantage of any delay of the defendant.

## V

In the court below there was some question as to the identity of the word ("fourth") in the codicil which defined the gift to the defendant. The defendant, over the objections of the plaintiffs, offered expert testimony as to what the word in question was. The plaintiffs objected on the ground that parol evidence is not admissible to decipher a patent ambiguity in a testamentary instrument. In support of this proposition the plaintiffs cite *Avery v. Chappel,* 6 Conn. 270, which held that parol evidence of the intention of the testator is not admissible to vary the terms of a will. We are not here concerned with the intent of the testator, as a state of mind, but with deciphering a particular word used to express that intent. The operative question put to the defendant's expert witness, Elizabeth McCarthy, was: "As a result of this examination [of the word under various degrees of magnification], did you reach a conclusion as to what the word in question was?" Clearly, this question called for an opinion as to what the disputed word was and not for an opinion as to the intent of the testatrix, as a state of mind. In the case of *Houghton* v. *Brantingham,* 86 Conn. 630, 86 A. 664, this court used a French-English dictionary to translate words in a will written in French. The instant case presents a situation somewhat analogous in that the intent of the testatrix was expressed in a manner which was ambiguous under ordinary observation by the naked eye. There was no error in the admission of the expert testimony as to the particular word actually used by the testatrix. 7 Wigmore, Evidence (3d Ed.) § 2025.

## VI

Finally, the plaintiffs seek certain deletions from, and additions to, the finding. The claim that certain paragraphs of the finding are without evidential support is without merit. The defendant sustained her burden of showing that these paragraphs were supported by evidence printed in the appendix to her brief. *Engelke* v. *Wheatley,* 148 Conn. 398, 411, 171 A.2d 402.

The claims for additions to the finding are also without merit. The plaintiffs' brief points to nothing showing that any of these facts were admitted or undisputed, in accordance with the procedure outlined in cases such as *Brown* v. *Connecticut Light & Power Co.,* 145 Conn. 290, 293, 141 A.2d 634. The attempt made in a paragraph of the draft finding to induce the court to characterize the defendant's failure to disclose the holograph prior to November 23, 1959, as deliberate and intentional is little more than a play on words. The operative facts were sufficiently found, and, as already pointed out, the court's failure to find laches, estoppel or election on the part of the defendant stands unchallenged.

On the general question of delay, it should not be overlooked that the defendant originally claimed that the decedent's residence was in California and consequently that jurisdiction of the settlement of her estate was there and not in Connecticut. In this situation, it would have been wholly inconsistent for her to offer the third codicil for admission to probate in Connecticut and at the same time to claim that the will and first two codicils were entitled to probate only in California. Notice of the third codicil was promptly given after the juris-

dictional claim had been decided adversely to the defendant and in accordance with the claim of these same plaintiffs. All this is clearly set forth in the finding as made.

There is error in the form of the judgment, it is set aside and the case is remanded for the rendition of a judgment corrected to conform to this opinion.

In this opinion the other judges concurred.