ROBERT P. LILLICO, COEXECUTOR (ESTATE OF ELIOT RUSSELL) *v.* STEVEN E. PERAKOS, TEMPORARY ADMINISTRATOR (ESTATE OF ELIOT RUSSELL), ET AL.

KING, C. J., MURPHY, ALCORN, COMLEY and SHANNON, Js.

Argued March 3—decided March 25, 1965

*John F. Lambert,* for the appellant (plaintiff).

*Louise H. Hunt,* with whom, on the brief, was *Irving S. Ribicoff,* for the appellee (defendant Rosenblatt); with her also were *Algert F. Politis* and, on the brief, *John L. Ericson,* for the appellees (defendants Krechevsky et al.).

KING, C. J. The plaintiff, hereinafter referred to as the proponent, was a coexecutor of, and a beneficiary under, the will of Eliot Russell, who died on September 11, 1963, at Charlotte Amalie, St. Thomas, Virgin Islands, United States. The Probate Court for the district of Berlin, upon proper notice, ordered a hearing on the admission of the will to

probate to be held September 19, 1963. This hearing was duly adjourned to November 25, 1963, thence to January 6, 1964, and finally to March 23, 1964. One of the disputed issues was whether the decedent, at the time of his death, was domiciled in Charlotte Amalie or in New Britain, within the Probate District of Berlin. The parties to this appeal agreed with the Probate Court that the issue of domicil would be the sole issue to be heard and determined at the hearing of March 23, 1964, hereinafter referred to as the first hearing. Thus, if that issue was found in favor of the proponent, the other issues, including those of due execution and testamentary capacity, would be taken up at a later hearing. See cases such as *Berkeley* v. *Berkeley,* 152 Conn. 398, 403, 207 A.2d 579.

The issue of the testator's domicil was a jurisdictional one, since the Probate Court for the district of Berlin would not have jurisdiction to admit to probate a will of a testator who was domiciled outside of that district. General Statutes §§ 45-4, 45-163; *Whitehead* v. *Roberts,* 86 Conn. 351, 355, 85 A. 538; 1 Locke & Kohn, Conn. Probate Practice §§ 50, 51. The agreed procedure was proper and desirable since a jurisdictional question, when called to the attention of the Probate Court, should ordinarily be determined before further proceedings are taken. *Olmstead's Appeal,* 43 Conn. 110, 112; *Whitehead* v. *Roberts,* supra; see also *Palmer* v. *Reeves,* 120 Conn. 405, 409, 182 A. 138.

Pursuant to this understanding and agreement, the parties appeared at the hearing, and evidence was presented solely on the issue of the decedent's domicil at the time of his death. The court decided that the testator died a domiciliary of New Britain. A decree, dated May 22, 1964, was so written as to

contain, in addition to the adjudication of the issue of domicil, an adjudication of the issues of due execution and testamentary capacity in favor of the proponent and an order admitting the will to probate.

Thereafter, one of the beneficiaries under the will (sic) petitioned the Probate Court to "modify and revoke" the decree of May 22, 1964. The Probate Court, under date of May 27, 1964, issued a "corrected" written decree in which it pointed out the agreed limitation on the scope of the first hearing and that the evidence there presented had been solely addressed to the issue of jurisdiction. The corrected decree then repeated the adjudication of domicil virtually verbatim from the first written decree, deleted the other matters therein stated to have been adjudicated, and ordered a hearing on the admission of the will to probate to be held on July 20, 1964.

On June 23, 1964, immediately after the expiration of the time in which an appeal could be taken from the original decree of May 22, the proponent appealed from the corrected decree of May 27, alleging that he was a coexecutor of, and a beneficiary under, the will and that he was aggrieved by the corrected decree. One of the contestants filed a motion to erase the appeal, which the Superior Court granted, in effect holding that the Probate Court, under the circumstances, had the power and duty to correct the decree of May 22 to speak the truth.

From the judgment erasing the appeal, this appeal is taken. The proponent's basic claim, as set forth in the reasons of appeal filed in the Superior Court, was that the Probate Court had no power to revoke or modify the decree of May 22 and that therefore

the decree of May 27 was a nullity. This claim is based on the well-established rule, claimed by the proponent to be applicable to this case, that if a probate decree has been rendered after proper notice, it cannot be revoked or modified except under express statutory authority. General Statutes §§ 45-9, 45-20; *Delehanty* v. *Pitkin,* 76 Conn. 412, 416, 56 A. 881; *Schutte* v. *Douglas,* 90 Conn. 529, 536, 97 A. 906; *Massey* v. *Foote,* 92 Conn. 25, 28, 101 A. 499; *Haverin* v. *Welch,* 129 Conn. 309, 316, 27 A.2d 791; *Owens* v. *Doyle,* 152 Conn. 199, 205, 205 A.2d 495.

In the first place, under the limitation which the court, pursuant to the agreement of the parties, had placed on the scope of the first hearing, insofar as the decree of May 22 purported to adjudicate anything beyond the jurisdictional question, the decree was rendered without any hearing whatsoever and in direct violation of General Statutes § 45-167 and of cases such as *Crane* v. *Manchester,* 143 Conn. 498, 501, 123 A.2d 752, and *Berkeley* v. *Berkeley,* supra. Of course, none of the cases relied on by the proponent upheld the validity of a decree purporting to admit a will to probate without any hearing. Consequently, none supports the proponent's claim.

We are not required, however, to determine whether the written decree of May 22 was absolutely void for lack of any hearing under the rule of cases such as *Berkeley* v. *Berkeley,* supra. This is because, on an entirely different ground, the action of the court below was correct. The record is lacking in clarity and completeness, and it is somewhat questionable whether the facts technically necessary to support the granting of the motion to erase sufficiently appear. See cases such as *Brown* v. *Cato,* 147 Conn. 418, 419, 162 A.2d 175. Proponent's coun-

sel, however, in his brief and oral argument, urges that we ignore the procedural limitations of a motion to erase and decide the case on the merits of his claim that the Probate Court had no power to correct the error in its written decree of May 22. Also, with commendable candor, he admits the limitation of the first hearing to the question of jurisdiction and that the written decree of May 22, insofar as it went beyond that issue, was a surprise to all parties. We have decided to follow the course requested, since so to do will not curtail the substantial rights of anyone and will obviate the possible necessity of further litigation in connection with the validity of the corrected decree.

In a Probate Court, there is generally no memorandum of decision, nor even any oral pronouncement of decision, separate and distinct from the judgment file or written decree setting forth the judgment rendered. That appears to have been the case here. But the written decree cannot be prepared until the judge of probate has decided the matter so that the decree may properly set forth the decision as actually made. In the instant case, the probate judge's decision as to the jurisdictional matter of domicil was correctly incorporated in the written decree of May 22. But there is nothing in the record to indicate that the judge of probate ever intended to, or in fact did, decide that the will should be admitted to probate without a hearing in direct violation of General Statutes § 45-167 and of cases such as *Berkeley* v. *Berkeley,* supra. We cannot assume, on this record, that he would make such a grossly erroneous decision. Only if he in fact had, would the substitute decree constitute a modification or revocation of a judgment actually rendered within the rule of cases such as *Delehanty* v. *Pitkin,*

supra. The judge of probate did not purport to modify or revoke the first decree. Rather, he described the second written decree as a "corrected decree."

Under the circumstances, we presume legality rather than illegality, and, consequently, that the second written decree was, as the judge of probate described it, a correction of the first decree. This would not modify or revoke the first judgment but would make the record conform to the first judgment as actually rendered. The original judgment would thus have been a valid judgment in full conformity with § 45-167 and cases such as *Berkeley* v. *Berkeley,* supra.

The Probate Court acted promptly in correcting the written decree.[1] No intervening equities appear to have arisen. *Owens* v. *Doyle,* supra, 209. As a court of record, General Statutes § 45-9, the Probate Court has inherent power to correct its records so as to make the history of its proceedings speak the truth. *Dunn's Appeal,* 81 Conn. 127, 133, 70 A. 703; *Hennessy* v. *Denihan,* 110 Conn. 646, 649, 149 A. 250; 1 Locke & Kohn, Conn. Probate Practice §§ 1, 88, 120. Where, especially under the peculiar circumstances here, the written decree erroneously describes the adjudication as actually made, the court does not lack power to correct the erroneous decree so as to make it correctly describe the judgment actually rendered.

There is no error.

In this opinion the other judges concurred.

---

[1] Technically, the Probate Court probably should have corrected the first decree rather than issuing a complete substitute decree under a subsequent date. See *Hennessy* v. *Denihan,* 110 Conn. 646, 649, 149 A. 250. The procedure followed, under the circumstances, was not, however, harmful even if technically erroneous.