[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action is an appeal by Jo E. Hill (Hill) from a decision rendered in the Probate Court of Guilford, Connecticut. The appellant contends she is aggrieved by the denial of her Application for Probate of Codicil and Revocation of Order Admitting Will to Probate to the extent that it is inconsistent with a Codicil.
The evidence has established the deceased Peter J. LaFata (LaFata) separated from his wife Audrey LaFata in 1984. At the time of separation there was a minor child, Cynthia LaFata. In 1988, while still separated, LaFata executed a will which named his wife and daughter as beneficiaries of his estate. In 1986, Jo E. Hill moved into LaFata's home in Guilford with her minor son, Frank Hill. From that time until his death on November 10, 1994, they developed a close relationship. They lived together in his home in Guilford, Connecticut until 1990. In 1990, Hill decided to return to the area of her family in Chapel Hill, North Carolina. Shortly after she moved there, LaFata followed her and established a residence in Pittsboro, North Carolina. In the spring of 1991, LaFata purchased a parcel of land in Pittsboro, North Carolina consisting of 17.2 acres, and situated on the property were about six buildings. The building consisted of a barn and other small buildings some of which were chicken houses. There was no running water or plumbing and they required considerable work by both LaFata and Hill to clean and build improvements to create livable areas. In the process of the work, Hill contributed approximately $8000 for the improvements. Hill then established a residence in the barn. While they were living on the property on November 23, 1991, LaFata woke Hill up and he wrote out a statement and drew a diagram of a two acre parcel within the 17.2 acre property which he stated he wanted her to have if anything should happen to him. Hill observed him writing the document and then signing his signature. The document was then put in a plastic bag in his truck, and then at a later time he put it in a cardboard box in his residence. At a later time it was put into a grey Samsonite suitcase with his other valuable papers which included bills, checkbooks, ledgers, receipts, contracts, maps and insurance policies. Hill also put her son's birth certificate and her car title, registration and insurance documents in the suitcase. After the document was executed and put away, the parties continued to reside at the property. In 1993, LaFata purchased another large parcel of land in the area, and then he developed that parcel into a nine hole golf course and a driving range in 1994.
Hill was in her residence in the barn on or about November 10, 1994, CT Page 11618 when she was told by Cynthia LaFata that LaFata was found dead in a little house on the property. Upon being advised of his death, Hill got the suitcase containing his valuable papers, and she then took out the holographic document, as well as her son's birth certificate and the documents related to her automobile. The grey Samsonite suitcase was then given to Cynthia LaFata with the remaining important papers of her father. After the wake, Hill received a letter from an attorney telling her to vacate the property. Hill then became upset because LaFata had told her he wanted her to have the barn, and studio as her home as shown on the holographic document which he had written and drawn on November 23, 1991.
During the period of from 1990 until the death of LaFata he maintained a residence in North Carolina. However, LaFata maintained his domicile in Connecticut where he continued his home in Guilford. LaFata, prior to his death, would commute to Connecticut, Vermont and New York where he owned rental properties, but he would always return to his residence in North Carolina. Although LaFata was domiciled in Connecticut, on November 23, 1991, he was a resident of North Carolina when the holographic document was executed by him. On November 23, 1994, Cynthia LaFata filed an application with the Guilford Probate Court to probate the will dated March 8, 1988. That court then appointed her as executrix under the will. Hill filed an application with the Guilford Probate Court seeking to revoke so much of its order admitting the will to probate as is inconsistent with the holographic document of the decedent. It was Hill's contention that the document was a holographic codicil which was valid to pass title to her under the law of North Carolina.
Connecticut General Statute § 45a-251 provides:
 A will or codicil shall not be valid to pass any property unless it is in writing, subscribed by the testator and attested by two witnesses, each of them subscribing in the testator's presence; but any will executed according to the laws of the state or country where it was executed may be admitted to probate in this state . . .
The North Carolina General Statutes relating to holographic instruments are found in Sec's 31-3.4 which provide as follows:
"31-3.4. Holographic will
(a) A holographic will is a will
 (1) Written entirely in the handwriting of the CT Page 11619 testator but when all the words appearing on a paper in the handwriting of the testator are sufficient to constitute a valid holographic will, the fact that other words or printed matter appear thereon not in the handwriting of the testator, and not affecting the meaning of the words in such handwriting, shall not affect the validity of the will, and
 (2) Subscribed by the testator, or with is name written in or on the will in his own handwriting, and
 (3) Found after the testator's death among his valuable papers or effects, or in a safe-deposit box or other safe place where it was deposited by him or under his authority, or in the possession or custody of some person with whom, or some firm or corporation with which, it was deposited by him or under his authority for safekeeping.
 (b) No attesting witness to a holographic will is required."
The Guilford Probate Court under the provision of C.G.S § 45a-295
has the authority to admit the codicil to probate and to revoke, annul and set-aside any order or decree approving the will so revoked, and any other order or decree of that court. C.G.S § 45a-251 applies equally to wills and codicils if validly executed according to the state where it was executed Owens v. Doyle, 152 Conn. 199. This statute also permits the Probate Court to revoke its prior order admitting a will to probate including the authority to partially revoke that order.
The evidence presented in the course of the trial has established though the testimony of the appellant Hill, as well as the witnesses Frank Hill, Robert Mozie and Gilbert Lombard, Jr., that the document was the handwriting of the deceased LaFata. The holographic codicil was subscribed by the testator in his own handwriting. The holographic codicil was found after his death among his valuables in his suitcase which evidenced the testators intent that the instrument be kept in a safe location. These conclusion reached by the court establish that each of the requirements set forth in Section 31-3.4 of the North Carolina statutes have been satisfied.
The appellee contends the document was not written by the decedent, and the appellant failed to sustain the burden of proof that the decedent had written the document. This court had the opportunity to observe the witnesses who testified regarding the handwriting of the decedent, and I CT Page 11620 found their testimony to be credible. They had the opportunity to observe the decedent write out various documents and they satisfied this court that the holographic document was the writing of the decedent. Furthermore, the letters written by the decedent to the appellant (Exhibit 15) clearly establish to the satisfaction of this court that he had written and signed the holographic document.
The appellee argues the document was not intended to operate as a will or codicil. The testamentary character of the language in the instrument that "If anything happens to me" has been held by the North Carolina Supreme Court in In re Westfeldt, 188 N.C. 702 (1924) to show a clear intent of the decedent to pass property upon his death. From the circumstances under which the decedent executed, the wording thereof, the conveyance of the instrument to the appellant, and the location of the document after his death, this court finds the animus testandi of the testator is clearly established Roundtree v. Roundtree, 213 N.C. 252
(1938), Alston v. Davis, 118 N.C. 202, 208 (1896).
The further claim of the appellee that the document was not found among the decedents papers is also found to be without merit. The suitcase delivered to Cynthia LaFata after death did contain valuable papers which along with the codicil included real estate deeds, automobile titles, insurance policies, a check ledger, blue prints, bills and receipts. The contents do meet the standard set forth in North Carolina for valuable papers within the meaning of North Carolina Gen. Stats. Sec. 31-18.2(2).Spain v. Wilson, 258 N.C. 310 (1962); In re Cole's Will, 171 N.C. 74
(1916). The fact that the decedent may have kept other valuable papers at his domicile in Guilford, Connecticut does not defeat this conclusion because if there are two or more depositories of valuable papers and effects, the finding in either will suffice. In re Westfeldt, supra. at 709.
The diagram drawn as part of the holographic codicil sets forth the dimensions of the approximate two acre parcel as 265 feet by 375 feet. It also located the distance of the boundaries of the property from the existing barn. The decedent as the owner of the total parcel of 17.2 acres intended to convey this piece of land together with the right of access from the public highway #87. Therefore, it is apparent that since the parcel described was situated some distance from the highway it was the decedent's intent to convey access to the parcel across the portion retained by his estate.
For the foregoing reasons this court finds the requirements of both Connecticut and North Carolina law have been met regarding the admission of the codicil to probate. Therefore, the Application for Probate of the Codicil is approved and the order of the Probate court admitting the CT Page 11621 decedent's 1988 will to probate is revoked to the extent that it is inconsistent with the Codicil.
Howard F. Zoarski, Judge Trial Referee