******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## JEREMY A. CHARTIER ET AL. *v.* JOHN CHARLES VALLIERE ET AL.
### (AC 47615)

Elgo, Moll and Seeley, Js.

*Syllabus*

The defendants appealed from the trial court's judgment admitting to probate the purported will of the decedent, which named the plaintiffs as executors of the decedent's estate. The defendants claimed, inter alia, that the court improperly denied their motion to dismiss the action on timeliness grounds because the action, which had been brought by the plaintiffs as an appeal from a decree of the Probate Court pursuant to statute (§ 45a-186 (b)) was not filed within thirty days. *Held*:

The trial court improperly denied the defendants' motion to dismiss, as the plaintiffs failed to file their appeal of the Probate Court's decree within the thirty day appeal period set forth in § 45a-186 (b), and the plaintiffs' claim that the appeal period ran from the date the Probate Court issued a second decree was unavailing, as that decree, which merely added a statutory reference and elaborated on the factual findings made in the first decree, was issued pursuant to the Probate Court's inherent power to correct its records and was not a modification of the first decree, and, thus, the trial court lacked subject matter jurisdiction over the appeal.

Argued March 12—officially released July 29, 2025

*Procedural History*

Appeal from a decree of the Probate Court for the district of Plainfield-Killingly appointing the named defendant as an independent administrator of the Estate of Susan Chartier and declaring a certain will to be invalid, brought to the Superior Court in the judicial district of Windham, where the court, *Altermatt, J.*, denied the motion to dismiss filed by the defendant Allen Chartier et al.; thereafter, the case was tried to the court, *Altermatt, J.*; judgment for the plaintiffs, from which the defendant Allen Chartier et al. appealed to this court. *Vacated*; *judgment directed*.

*Ernest J. Cotnoir*, for the appellants (defendant Allen Chartier et al.).

*Jayme E. Stamper*, with whom, was *Kayley Hoffman*, for the appellees (plaintiffs).

*Opinion*

MOLL, J. The defendants Allen Chartier and Carolyn Chartier[1] appeal from the judgment of the Superior Court admitting to probate the purported will of the decedent, Susan Chartier, which names the plaintiffs, Jeremy A. Chartier and Dianne Laferriere,[2] as executors of the decedent's estate. On appeal, the defendants claim that the court (1) improperly denied their motion to dismiss the present action on timeliness grounds, and, (2) in the alternative, incorrectly found that the plaintiffs had satisfied their burden of showing that the purported will was properly executed. We agree with the defendants' first claim and, accordingly, vacate the judgment of the Superior Court.

The following facts, which are undisputed, and procedural history are relevant to our resolution of this appeal. The decedent, who died on June 1, 2023, was survived by three siblings, including the two defendants. On June 13, 2023, the plaintiffs petitioned to the Probate Court to admit to probate as the decedent's will an instrument dated April 27, 2023 (purported will), and to grant either letters testamentary or letters of administration to the proposed fiduciaries, the two plaintiffs. In the petition, the plaintiffs expressly requested a hearing for the specific purpose of considering the "admission of the will . . . and [the] appointment of [fiduciaries]." The purported will left the entirety of the decedent's

---

[1] In the present action, the plaintiffs originally named as defendants John Charles Valliere, Thomas Chartier, Allen Chartier, and Carolyn Chartier. Thomas, Allen, and Carolyn are the siblings of the decedent, Susan Chartier. Only Allen and Carolyn, however, are parties to this appeal. In the interest of simplicity, we refer to Allen and Carolyn collectively as the defendants.

[2] Jeremy A. Chartier is the son of Thomas Chartier and the nephew of the decedent. Dianne Laferriere is Jeremy's partner. We refer to Jeremy and Dianne collectively as the plaintiffs.

estate to the plaintiffs and named them as executors of the estate. On July 12, 2023, the defendants moved for "a temporary independent administrator [to] be appointed, such as an independent attorney, who can safeguard the assets and preserve the status quo of the [decedent's] estate assets to administer justice." On that same day, the defendants also moved to contest the purported will on the basis of "undue influence; fraud; improper execution; lack of competence, unsound mind and/or duress."

Following a hearing on July 26, 2023, by way of a decree dated July 26, 2023 (first decree), the Probate Court, *Rowe, J.*, appointed John Charles Valliere as the independent administrator of the decedent's estate. The first decree states in relevant part: "The [plaintiffs] submitted [the purported] will to the court. The [purported] will, as submitted, includes signatures averring to be that of the decedent and [two] witnesses. The [purported] will was not notarized and the witnesses did not appear in court. Of note, this file was previously calendared, and a continuance was requested by the [plaintiffs] to allow for time to retain counsel and secure the witnesses' attendance at the hearing. The witnesses did not appear today, and the [plaintiffs] have not yet secured counsel. As there exists the potential for waste to be committed and with the mandate to ensure the protection of the estate, the hearing was held today. . . . The petition is approved, administration of the estate is granted to [Valliere], and letters of administration are hereby issued to [Valliere]." The first decree also ordered Valliere, in his capacity as administrator, (1) to file a true and complete inventory of all property of the decedent's estate, (2) to file the Connecticut estate tax return, (3) to settle the decedent's estate within twelve months, and (4) to record a "Notice for Land Records/Appointment of Fiduciary, PC-251," on the land records of each town where the decedent

owned or had an interest in real property. Notice of the first decree was sent to the parties on July 27, 2023.

On August 24, 2023, the plaintiffs filed a request for a hearing to address the validity of the purported will. Thereafter, the defendants objected, arguing that the Probate Court had already acted on this request when it held a hearing on the plaintiffs' petition to admit the purported will, after which the Probate Court appointed Valliere as an independent administrator of the estate. The plaintiffs did not appeal from the first decree pursuant to General Statutes § 45a-186 (b).[3]

On September 13, 2023, the court issued a second decree (second decree). The second decree was identical to the first decree, except for the addition of a paragraph that reads: "The operative language of [General Statutes §] 45a-251[4] states that 'a will or codicil shall not be valid to pass any property unless it is in writing, subscribed by the testator and attested by two witnesses, each of them subscribing to the testator's presence . . . .' The [purported] will as submitted is type-written although not on any letterhead. There were

---

[3] General Statutes § 45a-186 (b) provides: "Any person aggrieved by an order, denial or decree of a Probate Court may appeal therefrom to the Superior Court. An appeal from a matter heard under any provision of section 45a-593, 45a-594, 45a-595 or 45a-597, sections 45a-644 to 45a-677, inclusive, sections 45a-690 to 45a-703, inclusive, or section 45a-705a, shall be filed not later than forty-five days after the date on which the Probate Court sent the order, denial or decree. Except as provided in sections 45a-187 and 45a-188, an appeal from an order, denial or decree in any other matter shall be filed on or before the thirtieth day after the date on which the Probate Court sent the order, denial or decree. The appeal period shall be calculated from the date on which the court sent the order, denial or decree by mail or the date on which the court transmitted the order, denial or decree by electronic service, whichever is later."

[4] General Statutes § 45a-251 provides: "A will or codicil shall not be valid to pass any property unless it is in writing, subscribed by the testator and attested by two witnesses, each of them subscribing in the testator's presence; but any will executed according to the laws of the state or country where it was executed may be admitted to probate in this state and shall be effectual to pass any property of the testator situated in this state."

blank spaces left incomplete with regards to support for the decedent's pets. While according to [§] 45a-251 there is no absolute requirement that notarization occur, the somewhat generic nature of the structure of the [purported] will coupled with the lack of witness attendance at today's hearing [(i.e., on July 26, 2023)], even with the additional time allowance for their attendance, [persuades the court that] questions as to the validity of the witnesses' signatures exist rendering the [purported] will invalid." (Emphasis omitted; footnote added.) Like the first decree, the second decree is dated July 26, 2023. Notice of the second decree was sent to the parties on September 13, 2023.

On September 27, 2023, the plaintiffs commenced an appeal in the Superior Court. The plaintiffs alleged that they were aggrieved by the second decree because the purported will was the last will and testament of the decedent, it was properly executed pursuant to the requirements set forth in § 45a-251, and the decedent was of sound mind when she executed the purported will.

On December 7, 2023, the defendants filed a motion to dismiss the plaintiffs' appeal on the ground that the Superior Court lacked subject matter jurisdiction because the appeal was not timely filed. Specifically, the defendants argued that, despite the issuance of the second decree in September, 2023, "[t]he actions which the plaintiffs seek to reverse are the Probate Court's failure to admit the purported will and the appointment of an independent administrator. These are all actions taken by the Probate Court on July 26, 2023, after a duly noticed hearing. Notice of the [first] decree and a copy thereof was sent by the Probate Court to all parties on July 27, 2023, so that an appeal, to be timely, would have needed to be filed no later than August 28, 2023." The plaintiffs opposed the defendants' motion to dismiss, arguing that their appeal was timely filed because

the first decree did not address the validity of the purported will. The second decree, the plaintiffs argued, "differ[ed] significantly from the [first decree] in that it included the Probate Court's determination that the purported will was invalid and included a citation to § 45a-251." Relying on General Statutes § 45a-128,[5] which, upon the modification of a decree, grants "the same right of and time for appeal as in the case of any other order or decree," the plaintiffs contended that pursuant to § 45a-186 (b); see footnote 3 of this opinion; they had thirty days from the date on which notice of the second decree was sent to the parties to appeal to the Superior Court.

On February 6, 2024, the court, *Altermatt, J.*, denied the defendants' motion to dismiss. The court stated that the determination of whether the appeal was timely filed turns on when the Probate Court issued its decree regarding the issue being appealed, namely, the validity of the purported will. The court determined that, "[w]hile the Probate Court in its first decree approved the granting of letters of administration and directed the appointed [administrator] to settle the estate, it did not address the validity/invalidity of the [purported] will, either in its orders or its findings. In the second

---

[5] General Statutes § 45a-128 provides in relevant part: "(b) . . . [A]ny order or decree other than a decree authorizing the sale of real estate made by a court of probate may, in the discretion of the court, be reconsidered and modified or revoked by the court, on the court's own motion or on the written application of any interested person. Such application shall be made or filed within one hundred twenty days after the date of such order or decree and before any appeal is allowed or after withdrawal of all appeals. The court may reconsider and modify or revoke any such order or decree for any of the following reasons: (1) For any reason, if all parties in interest consent to reconsideration, modification or revocation, or (2) for failure to provide legal notice to a party entitled to notice under law, or (3) to correct a scrivener's or clerical error, or (4) upon discovery or identification of parties in interest unknown to the court at the time of the order or decree.

"(c) Upon any modification or revocation there shall be the same right of and time for appeal as in the case of any other order or decree."

decree, however, the Probate Court addressed the [purported] will in its findings and specifically stated that the [purported] will was invalid." Thus, in the court's view, "the running of the statutory appeal period began after issuance of the second decree, in which the [purported] will was declared invalid. As such, the [plaintiffs'] appeal was timely filed . . . ."

On March 1, 15 and 22, 2024, the Superior Court, sitting as the Probate Court; see *Connery* v. *Gieske*, 323 Conn. 377, 390, 147 A.3d 94 (2016); conducted a trial de novo on the plaintiffs' application to submit the purported will. The court admitted into evidence several exhibits in full and heard testimony from several witnesses, including the two individuals, Gary Caputo and Albert Caputo, who signed the purported will as witnesses to its execution. On April 22, 2024, the court issued an order finding by clear and convincing evidence that the purported will was valid. The court stated in relevant part: "In reaching its determination, the court relied heavily on the testimony of the witnesses who were present on the date the [purported] will was executed, as well as those who interacted with the [decedent] during the period leading up to the execution. The court found the testimony of Gary Caputo to be particularly persuasive and credible regarding [the decedent's] mental status, her awareness of her family situation and her assets, and her desires as to how and to whom her assets should be devised. . . .

"The evidence demonstrated that the [purported] will was executed with the requisite statutory formalities, and that [the decedent] had testamentary capacity when she prepared and executed [the purported] will. Conversely, the defendants were unable to demonstrate by a fair preponderance of the evidence that the [decedent] was subjected to undue influence leading up to or during the execution of [the purported] will, whereas the plaintiffs, by clear and convincing evidence, disproved

the defendants' claim of undue influence." This appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin by setting forth the applicable standard of review and relevant legal principles. "The standard of review for a motion to dismiss is well settled. A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . Our review, therefore, is plenary." (Citation omitted; internal quotation marks omitted.) *Porto* v. *Sullivan*, 119 Conn. App. 360, 364, 987 A.2d 1092 (2010).

"Our legislation has always favored the speedy settlement of estates, and to that end has carefully limited the time within which such appeals [from probate] must be taken. . . . It is a familiar principle that a court which exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation. . . . Our courts of probate have a limited jurisdiction and can exercise only such powers as are conferred on them by statute. . . . They have jurisdiction only when the facts exist on which the legislature has conditioned the exercise of their power. . . . The Superior Court, in turn, in passing on an appeal, acts as a court of probate with the same powers and subject to the same limitations. . . . The right to appeal from a decree of the Probate Court is purely statutory . . . and the requirements fixed by statute for taking and prosecuting the appeal must be met." (Citation omitted; internal quotation marks omitted.) Id., 365.

The applicable time frame for appeals from a judgment of the Probate Court to the Superior Court is set forth in § 45a-186 (b), which provides in relevant part:

"Any person aggrieved by an order, denial or decree of a Probate Court may appeal therefrom to the Superior Court. . . . [A]n appeal from an order, denial or decree . . . shall be filed on or before the thirtieth day after the date on which the Probate Court sent the order, denial or decree. . . ." "Failure to comply with the relevant time limit set forth in [§ 45a-186 (b)] deprives the Superior Court of subject matter jurisdiction and renders such an untimely appeal subject to dismissal." (Internal quotation marks omitted.) *Rider* v. *Rider*, 210 Conn. App. 278, 286, 270 A.3d 206 (2022).

With these legal principles in mind, we turn to the merits of the defendants' dispositive claim on appeal. The defendants argue that the Superior Court improperly denied their motion to dismiss because the plaintiffs' appeal from the Probate Court decree was not timely filed pursuant to § 45a-186 (b). Specifically, the defendants contend that the appeal period began to run on July 27, 2023, when the Probate Court sent notice and a copy of the first decree to the parties. Moreover, the defendants argue that the Superior Court's conclusion to the contrary was predicated on its incorrect determination that the first decree failed to rule on the validity of the purported will. Therefore, the defendants contend that, because the plaintiffs' appeal was filed outside the time limit set forth in § 45a-186 (b), the Superior Court lacked subject matter jurisdiction over the appeal.[6] In response, the plaintiffs argue that, because the Probate Court did not specifically state that the purported will was invalid, Valliere was appointed as a temporary independent administrator and the issue of the validity of the purported will was not decided.

---

[6] Because we conclude that the Superior Court lacked subject matter jurisdiction over the appeal from the Probate Court, we need not reach the merits of the defendants' second claim, namely, that the Superior Court improperly found that the plaintiffs had satisfied their burden of showing that the purported will was properly executed pursuant to the requirements set forth in § 45a-251.

Therefore, the plaintiffs claim, because the first decree did not rule on the validity of the purported will, the second decree constituted a modification of the first decree pursuant to § 45a-128 (b) and the appeal period began to run when notice of the second decree was sent to the parties on September 13, 2023.[7] They claim, therefore, that the appeal was timely filed. We agree with the defendants.

In light of the foregoing principles and the parties' competing assertions, the dispositive question is whether the first decree resolved the question of the validity of the purported will. The resolution of that question requires us to construe the first decree. "Like the consideration of a court's subject matter jurisdiction, the construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The judgment should admit of a consistent construction as a whole. . . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances." (Internal quotation marks

---

[7] Underlying the respective arguments of the plaintiffs and the defendants is an assumption that § 45a-128 (b) applies only to decrees that are not final. The defendants contend that the first decree was a final judgment pursuant to General Statutes § 45a-24, which provides in relevant part: "All orders, judgments and decrees of courts of probate, rendered after notice and from which no appeal is taken, shall be conclusive and shall be entitled to full faith, credit and validity and shall not be subject to collateral attack, except for fraud." Therefore, the defendants argue, the Probate Court has no power to reconsider, modify, or revoke the first decree, which was rendered after notice and a hearing. On the other hand, the plaintiffs argue that the first decree was not a final decree as to the validity of the purported will, and, therefore, the court still had the authority to make a modification pursuant to § 45a-128 (b). Because we conclude subsequently in this opinion that § 45a-128 does not apply under the facts of the present case, we need not resolve whether the parties' assumption is correct.

omitted.) *Sacramone* v. *Harlow, Adams & Friedman, P.C.*, 218 Conn. App. 288, 298, 291 A.3d 1042 (2023).

We begin with the recognition that the first decree is not a model of clarity. The plaintiffs' petition sought two orders from the court: a declaration that the purported will was valid and, pursuant to the purported will, an appointment of the two plaintiffs as executors of the decedent's estate. Although the first decree states generally that "[t]he petition is approved," it granted neither of the plaintiffs' two requests. Moreover, although the first decree takes clear action regarding the appointment of an administrator of the estate, it does not expressly state that the purported will is valid or invalid.

Notwithstanding the lack of such express language of the first decree, the findings and orders therein require the conclusion that the Probate Court implicitly declared the purported will invalid. The first decree incorporates factual findings regarding the purported will that necessitate that conclusion. Specifically, the first decree observes that, although the purported will contains signatures "*averring* to be that of the decedent and [two] witnesses"; (emphasis added); the purported will was not notarized and the witnesses did not appear before the court at the hearing on the petition. Although the language of § 45a-251 is not explicitly included in the first decree, these findings indicate that the Probate Court concluded that the plaintiffs had not provided sufficient proof that the purported will was "subscribed by the testator and attested by two witnesses, each of them subscribing in the testator's presence," as required by § 45a-251. Moreover, the court's findings must be understood in conjunction with the principle that "a will's proponent retains the burden of proving, by a preponderance of the evidence, that the will was executed in the manner required by statute. . . . The proponent must prove anew that the will's execution was

in compliance with the statute in effect at the time it was executed. . . . To be valid, [a] will must comply strictly with the requirements of [the] statute. . . . Because the offer for probate of a putative will is in essence a proceeding in rem the object of which is a decree establishing a will's validity against all the world . . . the proponent must at least make out a prima facie case that all statutory criteria have been satisfied even when compliance with those criteria has not been contested." (Citations omitted; footnote omitted.) *Gardner* v. *Balboni*, 218 Conn. 220, 225–26, 588 A.2d 634 (1991). The court's findings, therefore, indicate that it concluded that the plaintiffs had failed to meet their burden to prove that the purported will complied with the statutory requirements.

Additionally, the first decree appointed Valliere to be the administrator of the decedent's estate and made several orders consistent with the granting of the defendants' contest of the purported will, including allowing twelve months for Valliere to settle the estate. The appointment of Valliere as the administrator and the issuance of the orders consistent with that appointment directly contradicted the purported will's express provisions, including its nomination of the plaintiffs as executors of the decedent's estate, thus indicating that the Probate Court implicitly declared the purported will invalid in the first decree. It is a fundamental principle of the law of wills that the intent of the testator, as expressed through the provisions of the will, is what governs. See, e.g., *Swole* v. *Burnham*, 111 Conn. 120, 121–22, 149 A. 229 (1930) ("The cardinal rule of testamentary construction is the ascertainment and effectuation of the intent of the testator, if that be possible. If this intent, when discovered, has been adequately expressed and is not contrary to some positive rule of law, it will be carried out."). In the present case, therefore, if the Probate Court had admitted the purported

will, its provision appointing the plaintiffs as executors would control. See id. In the alternative, as we will explain herein, if the court intended to delay its consideration of whether to admit the purported will, it would have appointed a temporary administrator. See General Statutes § 45a-316.[8] When the Probate Court deems an individual to have died intestate, however, it routinely appoints an administrator to settle the affairs of the decedent's estate. See General Statutes § 45a-303.[9]

[8] General Statutes § 45a-316 provides: "Whenever, upon the application of a creditor or other person interested in the estate of a deceased person, it is found by the court of probate having jurisdiction of the estate that the granting of administration on the estate or the probating of the will of the deceased will be delayed, or that it is necessary for the protection of the estate of the deceased, the court may, with or without notice, appoint a temporary administrator to hold and preserve the estate until the appointment of an administrator or the probating of the will. The court shall require from such administrator a probate bond. If the court deems it more expedient, it may order any state marshal or constable to take possession of the estate until the appointment of an administrator or executor."

[9] General Statutes § 45a-303 provides in relevant part: "(a) Jurisdiction of intestate estates. Probate costs. (1) When any person domiciled in this state dies intestate, the court of probate in the district in which the deceased was domiciled at his death shall have jurisdiction to grant letters of administration. . . .

"(b) Application, notice and hearing re letters of administration. Upon application for letters of administration to the court of probate having jurisdiction of the estate of an intestate decedent, the court shall, before granting letters of administration, after notice required by this section, hold a hearing. Notice of such hearing, either public notice, personal notice or both as the court deems best, shall be given to all persons interested in such estate, including the Commissioner of Revenue Services in the case of a nondomiciliary decedent, unless all persons so interested sign and file in court a written waiver of such notice, or unless the court, for cause shown, dispenses with such notice. The finding by the court that such estate is not more than sufficient to pay the expenses of administration, the funeral and last sickness shall be sufficient cause to dispense with such notice.

"(c) To whom letters of administration granted. (1) Upon hearing as required by this section, the court of probate having jurisdiction shall grant administration of the intestate decedent's estate to any one or more persons or their designees appointed in the following order, provided such person or persons are entitled to share in the estate of the decedent: (A) The surviving spouse, (B) any child of the decedent or any guardian of such child as the court shall determine, (C) any grandchild of the decedent or any

The first decree's order allowing Valliere twelve months to settle the estate is particularly significant to our conclusion that the Probate Court had found the purported will invalid. We recognize that, prior to the hearing held by the Probate Court regarding the validity of the purported will, the defendants filed a motion to appoint a temporary independent administrator of the decedent's estate pursuant to, inter alia, § 45a-316. See footnote 8 of this opinion. Nothing in the first decree, however, suggests that the appointment of Valliere was to be on a temporary basis, and the provision ordering him to "settle" the estate within twelve months clearly indicates that the appointment was permanent. See 31 Am. Jur. 2d 195, Executors and Administrators § 223 (2022) ("[i]n general, the authority of an executor or administrator continues until the estate is fully settled unless he or she is removed, dies, or resigns"). Moreover, the first decree did not reference § 45a-316, which allows the court to appoint a temporary administrator to maintain the status quo of the estate if it believes that the probating of the will of the deceased will be delayed. See footnote 8 of this opinion. If the Probate Court intended to afford the plaintiffs an opportunity to continue litigating the validity of the purported will, it should have explicitly stated that intention by noting that the issue would remain open or that the plaintiffs would have such opportunity at a later date. See *Sacramone* v. *Harlow, Adams & Friedman, P.C.*, supra, 218 Conn. App. 299. Thus, it is clear that the Probate Court intended in the first decree to appoint Valliere as a full or permanent administrator.

---

guardian of such grandchild as the court shall determine, (D) the decedent's parents, (E) any brother or sister of the decedent, (F) the next of kin entitled to share in the estate, or, on their refusal, incapacity or failure to give bond or upon the objection of any heir or creditor to such appointment found reasonable by the court, to any other person whom the court deems proper. . . ."

In summary, the first decree's factual findings calling into question whether the purported will's execution complied with the applicable statutory requirements, understood together with the appointment of Valliere as an independent administrator—in direct contradiction to the provisions of the purported will—indicate that the Probate Court in the first decree necessarily found the purported will invalid. The court's order directing Valliere to settle the estate within twelve months, which cannot be reconciled with the proposition that the first decree intended to leave open the question of the purported will's validity, further underscores our conclusion that the first decree must be understood to have denied the plaintiffs' application to submit the purported will.

Subsequent proceedings also inform our interpretation of the first decree. Specifically, the Probate Court's response to the plaintiffs' request for an additional hearing, via the issuance of the second decree, indicates that the court intended merely to amplify the first decree's implicit ruling that the purported will was invalid. The Probate Court issued the second decree without addressing the plaintiffs' request for an additional hearing. If the first decree had not determined the validity of the purported will, resolving that issue by way of a second decree would have been improper without prior notice or an additional hearing pursuant to General Statutes § 45a-286, which provides in relevant part that "[a]ny court of probate shall, before proving or disapproving any last will and testament, or codicil thereto, hold a hearing thereon, of which notice, either public or personal or both, as the court may deem best, has been given to all parties known to be interested in the estate, unless all parties so interested sign and file in court a written waiver of such notice, or unless the court, for cause shown, dispenses with such notice. . . ." Prior to the issuance of the second decree, the Probate Court

did *not* (1) hold a second hearing on the validity of the purported will, (2) provide notice of such a hearing, (3) obtain a written waiver from the parties of such notice, or (4) show cause to dispense with such notice. Instead, the second decree merely added a reference to § 45a-251—which, as was iterated, requires a will to be in writing, subscribed by the testator, and attested by two witnesses—and elaborated on its factual findings made in the first decree regarding the insufficiency of the evidence surrounding the signatures of the testator and witnesses. Thus, the circumstances surrounding the issuance of the second decree; see *Sacramone* v. *Harlow, Adams & Friedman, P.C.*, supra, 218 Conn. App. 298; lend support to our interpretation that the first decree was a final decree regarding the validity of the purported will. The second decree, therefore, was issued pursuant to the Probate Court's "inherent power to correct its records so as to make the history of its proceedings speak the truth." *Lillico* v. *Perakos*, 152 Conn. 526, 532, 209 A.2d 92 (1965).

We find unpersuasive the plaintiffs' argument that the second decree constituted a modification pursuant to § 45a-128 (b) and that, therefore, they had thirty days from the date on which the Probate Court provided notice of the second decree to appeal. "[Section] 45a-128 permits a Probate Court, in its discretion, to reconsider, modify or revoke an order or decree. The legislature has, however, limited the Probate Court's ability to do so to only four circumstances." *Sacramone* v. *Harlow, Adams & Friedman, P.C.*, supra, 218 Conn. App. 297. Specifically, § 45a-128 (b) provides that the Probate Court "may reconsider and modify or revoke any such order or decree for any of the following reasons: (1) For any reason, if all parties in interest consent to reconsideration, modification or revocation, or (2) for failure to provide legal notice to a party entitled to notice under law, or (3) to correct a scrivener's or

clerical error, or (4) upon discovery or identification of parties in interest unknown to the court at the time of the order or decree. (c) Upon any modification or revocation there shall be the same right of and time for appeal as in the case of any other order or decree."

The plaintiffs rely solely on the third circumstance of § 45a-128 (b), asserting that the second decree was a modification for the purpose of correcting a scrivener's error. If we accept the plaintiffs' premise, however, that the first decree left open the question of the validity of the purported will, the additional paragraph of the second decree cannot be understood to correct a mere scrivener's error in the first decree, and, therefore, the second decree does not qualify as a modification under § 45a-128 (b) on that basis. See, e.g., *State* v. *Rosario*, 238 Conn. 380, 386–88, 680 A.2d 237 (1996) (misstated date in search warrant was considered scrivener's error); *First Federal Savings & Loan Assn. of Rochester* v. *Pellechia*, 31 Conn. App. 260, 266, 624 A.2d 395 (misstatement of single digit of docket number was considered scrivener's error), cert. denied, 227 Conn. 923, 632 A.2d 701 (1993).

In sum, we conclude that, in the first decree issued by the Probate Court, it ruled that the purported will was invalid and, pursuant to § 45a-186 (b), the plaintiffs had thirty days from July 27, 2023,[10] to appeal to the Superior Court. Thus, the plaintiffs' appeal to the Superior Court on September 27, 2023, was not timely filed, and the Superior Court lacked subject matter jurisdiction over the appeal.

The judgment is vacated and the case is remanded with direction to render judgment dismissing the action.

In this opinion the other judges concurred.

---

[10] Section 45a-186 (b) provides in relevant part that "[t]he appeal period shall be calculated from the date on which the court sent the order, denial or decree by mail or the date on which the court transmitted the order, denial or decree by electronic service, whichever is later." It is undisputed that notice of the first decree was sent to all parties on July 27, 2023.